WILLIAM B. WERDEN *et al.*

*v.*

HUGH GRAHAM *et al.*

107  169
25a 349
107  169
28a  32
107  169
154  283
107  169
175  469

*Filed at Ottawa June 16, 1883.*

1.  SPECIFIC PERFORMANCE—*not decreed when it subserves no useful purpose.*  Courts of equity never decree the specific performance of a contract when the decree will be a vain and imperfect one.

2.  So a contract to assign an interest in letters patent for an invention will not be specifically enforced, on bill filed only a short time before the patent expires.

3.  CHANCERY—*jurisdiction—remedy at law—to recover damages for breach of contract—and to compel the assignment of an interest in a patent.*  A court of equity has no jurisdiction of a bill seeking solely to recover damages for a breach of a contract to perform services, and to assign an interest in letters patent, when there is no partnership account to be adjusted, and the contract is a personal one between the parties, not as partners, but as individuals.  The remedy in such case is complete and adequate at law upon the covenants of the contract.

APPEAL from the Appellate Court for the First District; —heard in that court on appeal from the Superior Court of Cook county; the Hon. JOHN A. JAMESON, Judge, presiding.

Appellants exhibited their bill in chancery against appellees, in the Superior Court of Cook county, on the 25th day of October, 1881, wherein they alleged that on the 25th day of November, 1865, they entered into an agreement, the substance of which is set out, and which is made an exhibit to the bill, as follows:

"This indenture, made and entered into this 25th day of November, A. D. 1865, between Alvaro B. Graham, in the county of Lake, and State of Illinois, party of the first part, and William B. Werden, of county and State aforesaid, and Cyrus A. Werden, of the county of Berkshire, and State of Massachusetts, party of the second part:

"Witnesseth, that whereas, the said party of the first part has invented a combined reaping and mowing machine, known and called the Champion Machine, for which invention an application is about to be made to the patent office at Washington, D. C., for letters patent; and whereas, the said party of the first part is desirous that the party of the second part shall engage in the manufacture of said machines:

"Now, therefore, the party of the first part hereby covenants and agrees to and with the party of the second part, that the party of the second part shall and may have the exclusive right to manufacture and sell said machines, according to the present model, and with improvements thereon and thereto as the party of the first part may become hereafter the inventor of, and entitled by law to letters patent therefor, prior to the termination of this contract, which said right shall continue and be in force from the date hereof till the patent about to be applied for as aforesaid shall become of no effect by lapse of time: *Provided, however,* that in case any patent may be obtained for said machine, or for any improvements thereon or thereto by the said party of the first part, territorial and shop rights to use the same may be sold and granted by the parties hereto, as is hereinafter provided.

"And the said party of the first part further covenants and agrees to and with the said party of the second part, that he will protect and save harmless the said party of the second part against any and every claim which any party or parties may make in and to the right of manufacture and sale of said machines by reason of any agreement or contract made with the said party of the first part prior to the making and delivering these presents. And the said party of the first part further covenants and agrees to and with the said party of the second part, that before letters patent shall be issued for said invention, he will make such necessary and proper assignment thereof to the said party of the second

part that said patent may and shall issue to the parties hereto jointly, giving to them an equal, undivided one-third interest therein, and in case the said party of the first part shall hereafter invent any improvements upon the present model which may be patented, he shall, before obtaining letters patent therefor, make such necessary and proper assignment thereof to the said party of the second part that the patent therefor may and shall issue to the said parties hereto jointly, as aforesaid; and that the party of the second part shall have the right to use said subsequent invention in and about the manufacture and sale of said machine, during the time this contract shall be in force, exclusively: *Provided,* that the party of the second part shall have no interest in any invention of the said party of the first part after this contract shall cease to be in force, by any reason whatever.

"And the party of the first part further covenants and agrees to and with the party of the second part, that he will work for the party of the second part in and about the manufacture of said machines, and the repairing (if required) of the same, by the second party paying therefor such wages as is received at the time by first-class mechanics in this city, so long as the party of the second part may desire his services in the business of said manufacturing and repairing, and that he will devote his time entirely to said business. And in consideration of the convenants and agreements of the said party of the first part, the said party of the second part covenants and agrees to and with the said party of the first part, that they will manufacture for sale, and sell the same, if they can, fifty of said machines the coming season, the said second party being at the whole of the expense of manufacturing and selling the same, and the profits arising from the sale of said machines, after deducting all expenses and losses, (if any,) to be equally divided between said individuals interested in said profits,—that is to say, each receiving one-third of said profits. And the said party

of the second part further covenants and agrees to and with the said party of the first part, that they will manufacture for the season of 1867, and each succeeding year, one hundred machines before mentioned, upon the same conditions before mentioned, and the profits arising therefrom to be divided in like manner; and if the business should warrant, and the second party so agree to build an excess over one hundred of said machines in any one year, then, and in that event, the said party of the first part is to pay to the said party of the second part eight per cent interest annually on one-third of all such capital as shall be necessary and used by said party of the second part in the business aforesaid, in the manufacturing said excess, and selling and repairing done in said business on said excess. And it is mutually agreed between the respective parties, that no sale of any part or right of said invention shall be made by either party without the written consent of all the others, and when any sales are made, the profits arising therefrom shall be divided as before mentioned, as in case of any other profits.

"And it is further covenanted and agreed between the respective parties, that the said business of manufacturing, repairing and selling said machines as aforesaid, may, at any time hereafter, be discontinued by a majority of the individuals to these covenants, by giving ninety days' notice to the other of their intention so to do: *Provided*, the said party of the second part shall, before the time of discontinuance, assign to the said party of the first part, in due form of law, any and all right, title and interest which the said party of the second part may at the time have in and to said invention for said machines, and any improvement thereon and thereto made by the said party of the first part, and coming within the terms of this contract, by virtue of any patent or patents, or otherwise. And the said party of the second part further covenants and agrees to and with the said party of the first part, they will pay to me, said party

of the first part, one-third of the net profits realized from the said business of manufacturing, repairing and selling said machines, over and above the actual cost of manufacturing, repairing and selling same, and losses sustained and suffered, of any and all kinds whatsoever, and over and above all actual and necessary expenses incurred in relation thereto, and that upon the first day of January of each and every year, or immediately thereafter, a complete settlement of the business shall be had and determined.

"And it is further agreed and understood between the respective parties, that in case a patent is not obtained for said machine, this agreement is to become of no effect. And it is also further covenanted and agreed between the respective parties, that for all the time in which said party of the second part shall be actually and necessarily engaged manufacturing or selling any of said machines, the same compensation shall be paid to the said party of the second part as is paid to the party of the first part for services so rendered, said amount to be paid out of the receipts.

"And it is further covenanted and agreed between the respective parties, that the covenants and agreements herein contained shall extend to, and be obligatory upon, the heirs, executors, administrators or assigns of the respective parties hereto.

"Witness our hands and seals the day and year first above written.

                              A. B. GRAHAM,   [seal.]
                              W. B. WERDEN,   [seal.]
                              C. A. WERDEN,   [seal.]

Signed, sealed and delivered in presence of J. E. Clarkson."

It is further alleged in the bill, that on or about the 5th day of December, 1865, Alvaro B. Graham, one of the appellees, filed in the patent office of the United States his petition for letters patent upon the machine mentioned in the con-

tract, accompanied with specifications, drawings, etc., and paid the fees required by law, which fees, and the fees for legal services in said application, were borne by the complainants; that after the execution of said contract complainants purchased a large and commodious foundry and machine shop, a large amount of tools, material and machinery, and employed a large force of men to manufacture the said harvesting machines, appointed said Graham as the foreman and general manager of said shops, and gave to him the sole management and direction of the same, and purchased, at his request, all the tools, machinery, materials and supplies, and hired and engaged all the assistants and workmen asked for by said Graham, or pointed out or suggested as needful or useful by said Graham, at any time; that thereafter, and on or about the 9th day of September, 1868, the aforesaid agreement was modified and altered by a certain agreement made between the complainants and said Graham, and one O. G. Blaisdell, a copy of which said agreement is made an exhibit, and is as follows:

"This agreement, made and entered into this 9th day of September, A. D. 1868, between W. B. and C. A. Werden, parties of the first part, and A. B. Graham and O. G. Blaisdell, parties of the second part:

"Witnesseth, that the said parties of the first part doth hereby agree to and with the said parties of the second part, to employ them, and do hereby employ them, to labor for the said party of the first part in manufacturing reaping and mowing machines, upon the following terms, and for the following terms, to-wit: The party of the first part shall furnish a shop to work in, being the shop now belonging to the party of the first part in Waukegan, and a moulding shop, one steam engine, one lathe, one milling machine, one centering machine, one cupola, one blower and one rattler, and any and all material of any and every kind to be used in

making said machine, and in addition thereto shall pay said parties of the second part for the labor in making said machines, such a sum of money as will make, when added to the cost of the material for each machine, for mowers $80, and for reapers $95, the same to be paid from time to time, as the work upon the machine progresses. And the said party of the second part do hereby agree to and with the said first party, that they will at once proceed in said shop, and before the mowing season of A. D. 1869, do all the labor necessary to build, and actually to build, for the said first party, one hundred mowers and reapers, the same to be of the style and kind known as Graham Machine, of iron frame, with the latest improvements, to be finished and painted in the same style as those of A. D. 1868, and all of the work to be done in first-class order and style, at and for the sum of $80 for mowers, and $95 for reapers, to be paid in the following manner, that is to say: First, the actual cost of the material necessary to be used in the making of each machine shall be deducted from the above price to be paid for constructing each machine, and the balance shall be paid in cash, from time to time, as the labor upon each machine progresses.

"And it is further agreed between said parties, that said second party shall furnish their own tools to do said work with, except such as is hereinbefore enumerated, and that all of the said machines shall be finished up ready for the sale of 1869, and that in no event shall said second party have any lien upon such machines, or any part thereof, for their labor upon the same under this contract.

"In witness whereof the parties have herewith set their hands and seals the day and year first above named.

W. B. and C. A. WERDEN,
A. B. GRAHAM,
O. G. BLAISDELL."

It is also further alleged in the bill, that said Alvaro B. Graham, one of the appellees, at or very near the date of the application for the patent before mentioned, made, executed and delivered to complainants and himself an assignment, in due form of law, of all the inventions and devices described, exhibited or shown in said application for letters patent, or then invented by him, and therein requested that a patent should issue to said three assignees jointly, upon said application, and said assignment was thereafter, on the 5th day of December, 1865, duly recorded in the patent office; that thereafter, and about February 11, 1867, said Alvaro B. Graham, one of the appellees, made and filed in the United States patent office his petition for the grant of letters patent to himself, upon certain other improvements in reaping machines, and thereafter filed his specifications and drawings, and procured complainants to pay the necessary fees of the government, and for legal expenses incident thereto, and while both of said applications were pending before the patent office, and before the patent had been issued upon either of them, caused the same to be amended, in this respect: The first application for a patent contained, first, a device which had for its object the connection of the finger-bar of the harvesting machine to the frame thereof, so as to secure the free passage of the finger-bar over the ground, and at the same time permit it to adjust itself perfectly to the inequalities of the surface over which it passed; and second, a device having for its object the cutting of lodged or fallen grain or grass in a proper manner, without clogging the machinery of the harvester; and third, a device for the proper gathering of the grass, and bending it over within the reach of the knives at the cutter-bar side of the machine; and when the second application was made, said Alvaro B. Graham, one of the appellees, withdrew from the first application the first of the above named devices, and included it in the second application, and thereafter, on the 11th of February, 1868, he

procured a patent on the second application to be issued in his own name,—wherefore the complainants charge, that, in equity, they became owners of the undivided two-thirds of said second patent. It is further alleged in the bill, that said appellee Alvaro B. Graham assigned said last mentioned patent to the other appellee, Hugh Graham, on the 12th of August, 1870, but charges that the latter, at the time, had full knowledge of complainants' rights,—that the transfer was. not made in good faith, etc.

It is further alleged, that said appellee Alvaro B. Graham, from November, 1865, to May, 1869, and during all the time that complainants continued to manufacture machines under the contract, had full and complete charge of complainants' shops and foundry, and was furnished by complainants with everything required, or desired, or requested, by him for the manufacture of the said machines under the contracts; that by unfair representations of said appellee Alvaro B. Graham, and by his neglect, and on account of his willful neglect and refusal to fulfill and comply with said contract, and because he had not then caused, and did not cause, his said machine to be a finished and properly made machine, the manufacture of said machine proved very disastrous to complainants, and caused them to sustain a loss of not less than $30,000; that appellees have refused to assign any interest in the last mentioned patent to complainants, and have collected many thousands of dollars for fees, damages and royalties, under said patent, and that they are wholly irresponsible.

Allegations excusing, or seeking to excuse, the filing of the bill then follow. Prayer is, that appellee Alvaro B. Graham be decreed to assign to complainants two-thirds interest in said patents, and two-thirds of all moneys received on account thereof, and that appellees be restrained from assigning any interest in said letters patent, and from collecting any claims, damages or fees thereunder, and for general relief. There was a demurrer to the bill, which was sustained, and on

appeal to the Appellate Court for the First District that decree was affirmed. This appeal is from that decision of the Appellate Court.

Mr. CHAS. H. WOOD, for the appellants:

Mere lapse of time is no bar to specific performance, except it shows an abandonment. *Bennett* v. *Welch,* 25 Ind. 143.

In this case complainants continually insisted on their rights. In such cases *laches* can not be set up as a bar. (*Tilton* v. *Stein,* 87 Ill. 122.) And when the circumstances satisfactorily account for the delay, relief will not be denied. *Hamilton* v. *Quimby,* 46 Ill. 90; *Clark* v. *Hoyle,* 52 id. 427; *Harper* v. *Ely,* 50 id. 180; *Gibbons* v. *Hoag,* 95 id. 69.

Waiting, under advice of counsel, for a decision in another case, is a good excuse for delay. *Cox* v. *Montgomery,* 43 Ill. 110.

Specific performance granted after twenty-seven years' delay,—in case of *Haffner* v. *Dickson,* 2 Har. & J. 46. After twenty-three years,—in *New Barbadoes T. B. Co.* v. *Vreeland,* 4 N. J. Eq. (3 Green,) 157; *Bennett* v. *Welch,* 25 Ind. 140.

Messrs. BANNING & BANNING, for the appellees:

A party can not compel the specific performance of a contract unless he has himself fully performed, or justly accounts for his non-performance. *Scott* v. *Sheperd,* 3 Gilm. 486; *Heckard* v. *Sayre,* 34 Ill. 142; *Stowe* v. *Russell,* 36 id. 18; *Supervisors* v. *Henneberry,* 41 id. 180; *Iglehart* v. *Gibson,* 56 id. 91; *Hoyt* v. *Tuxbury,* 70 id. 339.

The gross *laches* of appellants is fatal to the relief sought. *Milward* v. *Earl Thanet,* 5 Ves. 720, note; *Eades* v. *Williams,* 4 DeG. M. & G. 691; Story's Eq. sec. 771; 3 Parsons on Contracts, *357; Fry on Specific Performance, secs. 737, 744, 734; *Hough* v. *Coughlan,* 41 Ill. 134; *Roby* v. *Cossitt,* 78 id. 643; *Whittaker* v. *Robinson,* 65 id. 413.

There being no right to a specific performance, there is no other ground on which to maintain the bill, as the remedy for any supposed breach of the contract is complete at law.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

A bare reference to the terms of this contract would seem to be enough to demonstrate that it is now impossible of specific performance, however desirable it otherwise might be to hold appellee Alvaro B. Graham to its terms. It was made on the 25th day of November, 1865, and obligated appellants to "manufacture for sale, and sell the same, if they can, fifty of said machines," (the Champion Reaping and Mowing Machine,) "the coming season," (*i. e.*, the season of 1866,) to "manufacture for the season of 1867, and each succeeding year, one hundred machines before mentioned." The duration of the contract is, by its terms, limited to the period at which the patent therein provided for would expire, which, by virtue of sec. 4884, chap. 60, Rev. Stat. of the United States, is seventeen years. There is no allegation in the bill of a performance of the contract up to any recent period, but, on the contrary, it is alleged, in substance, that it never has been complied with by Alvaro B. Graham, and on that account, and for that claimed justification, it is alleged, inferentially at least, it has not been complied with by appellants. The precise date of the issue of the first patent is not alleged, but the issue of the second patent is alleged to have been on the 11th of February, 1867. From that date until the filing of the bill, October 25, 1881, lacks a little less than four months, only, of being fifteen years, or leaving but little over two years remaining within which the contract was to run. To now specifically perform such a contract is, obviously, impossible. Whatever else may be decreed, in the very necessity of things it can not be specific performance. Courts of equity never decree the specific per-

formance of a contract where the decree would be a vain or imperfect one.    *Tobey* v. *County of Bristol*, 3 Story, 800.

Treated as a bill for an account, we are also of opinion the bill can not be sustained.    It is said in Story's Equity Jur. sec. 794: "It may be stated as a general proposition, that for breaches of contract, and other wrongs and injuries cognizable at law, courts of equity do not entertain jurisdiction to give redress by way of compensation or damages, where these constitute the sole objects of the bill, for whenever the matter of the bill is merely for damages, and there is a perfect remedy therefor at law, it is far better that they should be ascertained by a jury than by the conscience of an equity judge,—and, indeed, the just foundation of equitable jurisdiction fails in all such cases, as there is a plain, complete and adequate remedy at law.    Compensation or damages, it should seem, ought therefore ordinarily to be decreed in equity only as incidental to other relief sought by the bill and granted by the court, or where there is no adequate remedy at law, or where some peculiar equity intervenes."    There is not claimed to be any peculiar equity here intervening.    The bill claims no profits or losses as the result of carrying out the partnership, for it is framed upon the hypothesis that the partnership was not carried out, and, we have just seen, there is no foundation for a decree for specific performance.    Appellants claim a decree solely for damages, and these, they allege, result, first, from the refusal of appellee Alvaro B. Graham to keep and perform his contract to render his personal services in the shops of appellants, and in overseeing the manufacture of machines, etc.; and second, from his refusal to keep and perform his contract that before letters patent should be issued for the invention to be applied for, he would make such an assignment that the patent should issue to appellants and himself jointly, giving to each person an equal, undivided one-third interest therein, and that he should make a like assignment

as to any improvements on that patent which he should apply for. These are clearly personal covenants between appellee Alvaro B. Graham and appellants, upon which, in case of breach, an action at law may be maintained. Alvaro B. Graham, as the party of the first part, covenants with appellants, as parties of the second part, each being, with respect to the other, an independent contracting party. The covenants are, in no sense, to the firm, or by the firm, but are to and by parties dealing with each other as individuals.

The modified agreement is, clearly, of the same character, and differs from the original agreement only in that there is an additional party to it. It is between appellants, as parties of the first part, and appellee Alvaro B. Graham, and O. G. Blaisdell, as parties of the second part, and the undertakings are expressly by the latter to the former, as individuals, and not to any firm of which they, or either of them, were members. For the breach of such covenants and agreements the remedy is, an action of covenant where the instrument is under seal, and where it is not, assumpsit. Parsons on Partnership, 275, note a; Collyer on Partnership, (Perkins' ed.) sec. 245. See, also, *Doyle et al.* v. *Bailey et al.* 75 Ill. 418.

Whether appellants shall be able to show a sufficient reason for their own failure to comply with their contract, will be left to be determined by the court of law, where they must seek their remedy.

We think the demurrer was properly sustained to appellants' bill, and that the judgment of the Appellate Court was therefore right. It must be affirmed.

*Judgment affirmed.*