WILLIAM SEEGER

v.

FREDERICK MUELLER ET AL.

*Highways—Bill to Enjoin Obstruction of Alleged Highway—Want of Equity.*

1. Equity will not do that which will be of no benefit to the party asking it, but only a hardship to the party coerced.

2. This court affirms a decree dismissing a bill to enjoin the obstruction of a strip of ground which had been designated as a road on a plat of school lands, and subsequently condemned as impassable by the commissioners of highways, it appearing that the complainant has no design to improve or use the road, but is actuated by spite and malice.

[Opinion filed May 28, 1888.]

APPEAL from the Circuit Court of Jo Daviess County; the Hon. WILLIAM BROWN, Judge, presiding.

The appellant filed his bill in equity in the court below, seeking to enjoin the appellees from obstructing twenty feet in width south and east of section 16, T. 28, R. 1, west 4 P. M., in Jo Daviess county, and from interfering with him, his agents, etc., from using and improving said strip, or removing obstructions therefrom so that it may be safe to travel, or from in any manner interfering with the free enjoyment of said road as may be for public or private use. That the appellees may be required to abate the nuisance of fences and obstructions placed by them on said road, etc.

It appears that the above section was school lands, and that the trustees of schools subdivided it into lots by a plat on which the roads are designated by double lines on which are written the words, "roads twenty feet wide." The appellant was the owner of three of the lots. The section was subdivided and platted in accordance with the provision of the laws of 1849, Sec. 17, which provides as follows: "That the trustees of schools shall divide the land into tracts or lots of such form and quantity as will produce the largest amount of money, and after making such division a correct plat of the same shall be made representing all the divisions, with each lot numbered and defined so that its boundaries may be forever ascertained, which plat, etc., shall be delivered to the school commissioner, and shall govern him in advertising and selling said lands."

Sec. 18. "In subdividing common school lands for sale, no lot shall contain more than eighty acres, and the division may be made into town and village lots, with roads, streets or alleys between them and through the same, and all such divisions, with all similar divisions hereafter made, are hereby declared legal, and all such roads, streets and alleys public highways."

The sale and subdivision of the school lands in question was made in 1856, and, we think, regular. The appellees also owned several of the lots in said section on which such road,

twenty feet wide around the whole tract, had been laid out, deriving their title, through the patentee, from the State. The road laid out was twenty feet wide around the entire section.

The patent conveyed the entire land, including the portion covered by the road, in accordance, however, with the plat of the trustees. The 16th section in question falls upon a rough tract of country, and is located among the hills and bluffs near the confluence of the Mississippi and Sinsinnewa rivers, and the portion where the road in question is located is exceedingly hilly and steep and full of deep, wide gullies, so that, without immense expense, out of all proportion to the benefits to be derived by complainant from any use of the road, the road could not be put in condition to travel.

Mr. E. L. BEDFORD, for appellant.

Messrs. D. & T. J. SHEEAN & McHUGH, for appellees.

LACEY, J. It is contended by appellees that the act in question authorizing the trustees to lay out school lands with roads, streets and alleys between the divisions applies only to streets and alleys where the land is laid out into town lots; that hence it is argued by them that the road was laid out without authority, the land not having been divided into town lots.

It appears from the evidence that the supposed road in dispute has never been traveled or worked by the public as a road since it was platted and since the land was purchased over twenty years ago. That portions of the supposed road have been fenced for over twenty years. The public authorities have refused to expend any money on the road on account of the impracticability of ever using it as a road, and had told appellee to fence it up. It appears also that appellant has now, and has had for many years, an outlet and road from his lots to the main public highway, and that even if the road were left open it could not be used without the expenditure of large sums of money on account of its narrowness and steep-

ness and its being crossed by deep ravines and gullies, and the evidence fully justifies us in believing that the appellant has no intention of using or improving the alleged road.

In 1878, the commissioners of highways of West Galena township, by a majority, condemned said strip and found it impassable; "that it would cost $500 to open it and would have no road then."

One of the commissioners of highways, Patrick Dillon, testified that he had viewed the strip as a commissioner and condemned it. "We found it rough and impassable;" and says, "I should judge it would cost between $8,000 and $10,000 to put that strip of ground in passable condition for teams with loads." "Opening the road wouldn't benefit anybody."

Waiving the question of what is the proper interpretation of the statute in question in regard to the right of the trustees of schools to lay out the road in the manner they did, we are clearly of the opinion that the appellant failed to show any equity in his bill or to show any facts which would authorize a court of chancery to interfere.

The appellant seems from the evidence to be actuated by "spite" and malice toward the appellees in seeking to compel them to open the road in question and in seeking to restrain them from again fencing it in with the balance of their land as they had done before appellant tore it down. It does not appear that the appellant has the remotest design to improve or use the road, but that his only aim is to annoy appellees.

The appellees at least own the land occupied by the twenty-feet strip subject to the easement, if there be one, and the appellant and the public being unable to use it for the purposes of a highway, equity will not restrain the appellees from making use of it, or compel them to remove their fences from the strip in question.

"Courts of equity are not bound at all times to enforce a strict legal right." Lewis v. Lyons, 13 Ill. 117; Stone v. Pratt, 25 Ill. 25. "Equity will not do that which will be of no benefit to the party asking it and only a hardship on the party coerced." Joliet, etc., R. R. Co. v. Healey, 94 Ill. 416;

Green v. Green, 34 Ill. 327; Werden v. Graham, 107 Ill. 169.

The above rule of law meets with our full approval and we feel that its application is most appropriate in this case. The decree of dismissal of the bill by the court below is affirmed.

*Decree affirmed.*