# Joseph v. Decatur Land, Improvement & Furnace Co.

### Bill in Equity to foreclose a Mortgage.

1. *When sale of land is made.*—Although there may be an oral agreement of sale and purchase several months before, a sale of land is not made until the deed thereto is executed by the vendor and delivered to the purchaser.

2. *Foreclosure of mortgage for purchase money; coverture no defense.*—To a bill filed to foreclose a mortgage executed by a married woman to secure the payment of the purchase money of land, coverture is no defense where the bill seeks no personal decree against the purchaser, but only a sale of the land to pay her secured debt.

4. *Decree of foreclosure; when error without injury.*—Although, on a bill filed to foreclose a mortgage executed by a married woman to secure the payment of purchase money of land, a decree of foreclosure is erroneous, in that it in terms foreclosed said mortgage, against which the plea of coverture was interposed and was a good defense, instead of declaring and effectuating complainant's vendor's lien, as might have been done under the prayer for general relief, it was error without injury, and does not justify a reversal, since the order of sale was what the complainant was entitled to upon the enforcement of the vendor's lien.

4. *Representations by the vendor as to proposed improvement; do not justify rescission of sale.*—Statements by the general manager of a vendor land company, acting as its agent, that the street in front of the lots sold the purchaser would be graded, that the lot opposite would be laid off and beautified as a park, and that the company would build a handsome hotel on the lot just below the lot sold, are but the expression of the belief, expectation, intention or opinion of the agent or company that these things would be done ; and, unless knowingly false and uttered with the intent to deceive, neither entitle the purchaser to rescind the sale, nor abate the purchase price by the decrease in the value of the lots by reason of such things not having been done.

APPEAL from the City Court of Decatur.

Heard before the Hon. W. H. SIMPSON.

The bill in this case was filed by the appellee against the appellant to foreclose a mortgage, executed by the respondent, to secure the payment of the purchase money agreed to be paid by her for lots 5 and 6 in block 26 of

complainant's addition number 4 to Decatur. The respondent by answer and pleas set up the several defenses stated in the opinion, and prayed that the said answer be taken as her cross-bill, under which she seeks relief, by the abatement of the purchase money for the damages alleged to have been sustained by her, because of the alleged false and fraudulent representations made to her by complainant's agent.

On the final hearing of the cause, upon the pleadings and proof, the court granted the relief prayed for in the original bill. Respondent appeals, and now assigns this decree of the court as error.

O. KYLE, for appellant.— (1.) The bill avers, and the proof shows without contradiction, that the map or plat of these lots, or the addition that they are in, was not upon record at the time of the purchase of these lots. That makes the sale void, the notes void, and as the notes are the foundation for the mortgage, makes the mortgage void.—Acts 1886-87, p. 93; *Dudley v. Collier*, 87 Ala. 533, 6 So. Rep. 304; *Woods v. Armstrong*, 54 Ala. 150; *Milton v. Haden*, 32 Ala. 30; *Harrison v. Jones*, 80 Ala. 412; *Youngblood v. Birmingham Trust Co.*, 95 Ala. 521.

(2.) Issue was taken upon the plea of coverture, and the plea was sustained by evidence. Mrs. Joseph was, at the time of the mortgage, a married woman, and her husband not having given consent in writing to said mortgage, it could not be foreclosed.—Code, 1886, § 2346; *Knox v. Childersburg Land Co.*, 86 Ala. 180, 5 So. Rep. 578; *Vincent v. Walker*, 86 Ala. 333, 5 So. Rep. 465; *Sheldon v. Carter*, 90 Ala. 380, 8 So. Rep. 63; *Harrison v. Simons*, 55 Ala. 510; *Peebles v. Stolla*, 57 Ala. 53.

HARRIS & EYSTER, contra.— (1.) The representations alleged by the respondent to have been made by the agent of the complainant were not such as would justify a rescission of the contract. They were merely the expression of the opinion or the expectation of the agent as to what would be done in the future.—*Knowlton v. Keenan*, 4 Amer. St. Rep. 282; *Jenkins v. Long*, 81 Amer. Dec. 374; *Adams v. Schiffer*, 7 Amer. St. Rep. 202; *Gage v. Lewis*, 68 Ill. 604; *Montgomery · Southern Railway Co. v. Matthews*, 77 Ala. 357; Kerr on Fraud & Mistake, 88;

Cook on Stockholders, §§ 143, 145; *Bradfield v. Elyton Land Co.*, 93 Ala. 527, 8 So. Rep. 383; *Griel v. Lomax*, 89 Ala. 427, 6 So. Rep. 741; *Lake v. Security Loan Asso.*, 72 Ala. 207. (2.) A purchaser seeking a rescission of a contract of purchase of lands because of fraud, must be both diligent and prompt; diligent to discover the fraud, and prompt to avail himself of the discovery when made. He can not retain possession and derive benefits from his purchase, and seek a rescission.—*Garrett v. Lynch*, 45 Ala. 204; *Conner v. Henderson*, 8 Amer. Dec. 103; *Burton v. Stewart*, 20 Amer. Dec. 692; *Voorhees v. Earl*, 38 Amer. Dec. 588; *Upton v. Tribilcock*, 91 U. S. 45; *Dent v. Long*, 90 Ala. 172, 7 So. Rep. 640; *Thompson v. Lea*, 28 Ala. 453; *Foster v. Gressett*, 29 Ala. 393.

(3.) Appellant's plea of coverture is not an answer to appellee's right to foreclose this mortgage. She still retains possession of the property and collects large rents therefor. "It is as unconscionable for a married woman to get the land of another, and keep it without paying the purchase money, as for one *sui juris* to do the same thing. *Pylant v. Reeves*, 53 Ala. 132; *Carver v. Eads*, 65 Ala. 190; *Crampton v. Prince*, 83 Ala. 246, 3 So. Rep. 519.

McCLELLAN, J.—This bill is filed by the Decatur Land, Improvement & Furnace Co., a corporation, against Martha E. Joseph, a married woman. It seeks the foreclosure of a mortgage executed by the respondent upon, and to secure the purchase money for, two certain town lots, which she had bought from the land company.

By answer, cross bill and pleas three lines of defense are attempted. In the first place, it is insisted that the sale to the respondent was void for that at the time it was made the lands of which these lots were a part had not been surveyed and platted, and a plat or map thereof filed and recorded in the office of the probate judge as required by the act of February 28th, 1887.—Acts 1886-87, p. 93. This act, in the opinion of the writer, has reference to lands in incorporated towns; and he thinks it is a sufficient answer to the respondent's contention in this connection to say that, whether this sale be considered to have been made in October, 1887, when negotiations began and some oral understanding was reached, or in May, 1888, when the transaction was fully con-

summated, the land was not in an incorporated town. Moreover, if the sale was made in May, 1888, when the deed and mortgage back were executed, the question is eliminated also by the fact that the statute, if applicable, had been complied with in the preceding February. My associates are, however, of the opinion that the act in question is not confined in its application to maps and plats of land in incorporated towns, and that if the sale made here had occurred prior to February, 1888, when the map was recorded, it would be avoided by the operation of the statute; but they are further of the opinion that for all the purposes of this case the sale must be taken as having been made in May, 1888, when the deed was executed by the land company to the purchaser and the notes for, and mortgage to secure the payment of, the purchase money were executed by the purchaser to the company. And it is, therefore, the judgment of the court that the statute, having been complied with, exerts no influence upon the rights of the parties as presented in this record.

The attempted defense of coverture is equally without merit. The bill seeks no personal decree against Mrs. Joseph, but only a foreclosure of the mortgage and sale of the premises to pay the secured debt. This debt being for the purchase money of the land, it is of no consequence that the respondent is and has all along been a married woman, and had not been relieved of the disabilities of coverture in respect of this transaction by the assent in writing of her husband to her entering into it. *Crampton v. Prince,* 83 Ala. 246, and cases there cited; *Wadsworth v. Hodge,* 88 Ala. 500, 7 So. Rep. 194; *Ramage v. Towles,* 85 Ala. 588, 5 So. Rep. 342; *Bogan v. Hamilton,* 90 Ala. 454, 8 So. Rep. 186.

And if it be conceded that the decree was technically irregular, or even erroneous, in that it in terms foreclosed the mortgage, against which the plea of coverture was good, instead of declaring and effectuating complainant's vendor's lien, as might have been done under the prayer for general relief, the irregularity or error is wholly without injury to the appellant—since the relief actually granted is precisely that to which complainant was entitled upon a declaration and enforcement of the lien for purchase money—and would not require or justify a reversal.

The other and main defense relied on is, that the complainant induced the respondent to purchase the lots in question by certain false and fraudulent representations, which, it is now insisted, entitled the respondent either to rescind the sale and purchase *in toto* and recover back the part consideration paid, namely the value of a house erected by her on the land, or to recoup against the demand advanced by the bill the difference between the value of the lots abstractly considered and what would have been their value had the representations been true. In considering this question we shall not go into a discussion of the evidence, but rather assume that the land company, through its officers and agents, communicated or stated to Mrs. Joseph the matters and things set forth in her answer and cross bill, of course not conceding her construction of what was said. These lots are situated at the corner of 2d Avenue and Prospect Drive, two streets in the (then contemplated) town of New Decatur, and fronted on the latter. Second Avenue was graded at the time of the sale, Prospect Drive was not; and there was an appreciable difference between the levels of the graded and the ungraded street. One of the alleged misrepresentations consisted of a statement by Bond, the land company's general manager, that Prospect Drive would be graded to a proper level with 2d Avenue and the other streets in the neighborhood. Across Prospect Drive from, and immediately in front of, these lots was a lot of land which was marked on the map of the locality made by the land company and by reference to which the lots were sold, "public park," and with reference to this Bond stated that that lot was to be or would be laid off and beautified as a public park. Some two hundred yards down Prospect Drive from these lots, and on the opposite side, was a lot which was marked on the map as a hotel site, and Bond represented to respondent that the land company would build a handsome hotel thereon to cost two hundred and forty thousand dollars, and that excavations had already been commenced or would soon be commenced on said lot to that end. The land company owned originally all the land embraced in what was called "Addition 4" to New Decatur of which the lots purchased by respondent, the lot marked "public park," the hotel lot and the streets referred to constitute parts, and had had the whole tract surveyed and laid off

into lots, streets, alleys, parks, &c., &c., and a map made of the survey, by reference to which lots were sold. The company's business and purpose in respect of this tract of land was the upbuilding of a town by the sale of lots to individuals and the improvement for the uses in view of those parts of the land which were reserved and dedicated, as indicated on its map, to public purposes. Prospect Drive was not graded as Bond said it would be. Excavations were then in progress or were soon after begun for laying the foundations and commencing the erection of the hotel, as Bond said they were or would be; but the work was afterwards discontinued and the hotel has never been built, contrary to Bond's statement in that behalf. Work was begun on the lot opposite respondent's lots to the end of laying it off and beautifying it as a public park; but this was also discontinued, and the lot was donated or devoted by the land company to school purposes, and a large school house has been erected thereon, and, with the lot, is now in use by a public school. We will also concede that had the hotel been built, the drive graded and the lot in front of respondent's premises been improved and kept up as a park, in accordance with the statement of Bond as to what would be done in respect of these several matters, the consequence would have been to materially enhance the value of the lots sold to respondent, and that any value attributable to them through anticipation of these things being done was in some material degree decimated by the failure to do each of the things Bond said would be done. We have now stated the case in the most favorable light to the respondent that the evidence admits of. And upon this statement we are driven to the conclusion that all that was said by Bond amounted to no more than the expression of his belief or expectation, or intention, or opinion, or the belief, expectation, intention or opinion of the land company, that the drive would be graded, the hotel built and the lot opposite respondent's laid off, beautified and maintained as a public park. The only *facts* stated by him were that said lot had been dedicated to the public as a park—and this was confessedly true—and that excavations had been commenced for the erection of the hotel—and this also was true. Indeed as to this last matter, it is not even averred or attempted to be proved that he said such excavations had been com-

menced, but only that his statement was that the work had been or shortly would be inaugurated, which is itself but an expression of opinion. Conceding every other contention of the respondent, therefore, in this connection, she can take nothing on account of the statements made by Bond, unless in the form in which they were made they were consciously false and made with a fraudulent purpose, because in so far as they were statements of fact they were true, and in so far as they did not turn out to be true they were not statements of fact at all.— *Manning v. Pippen,* 86 Ala. 357, 5 So. Rep. 572; *Montgomery Southern Railway Co. v. Matthews,* 77 Ala. 357; *Lockwood v. Fitts,* 90 Ala. 150; *Bradfield v. Elyton Land Co.,* 93 Ala. 527, 8 So. Rep. 383; *Birmingham Warehouse & Elevator Co. v. Elyton Land Co.,* 93 Ala. 549, 9 So. Rep. 235.

That the statements of Bond, granting he made them as respondent's evidence goes to show, were not known or believed by him to be false, or that, to speak more accurately, he did not know it was not the company's expectation, opinion and purpose to build the hotel, grade the drive and improve and maintain the park, but on the contrary he believed that these expectations and purposes were entertained and would be realized and executed, we have no sort of doubt. It is unreasonable to believe that the company engaged as it was in building up a town, having laid off the site into streets, alleys, parks, lots, &c., and having graded other streets which connected immediately with Prospect Drive in such way as to leave a material unevenness in its level, and that of such other streets, did not intend to grade that street also. It is even more unreasonable to conclude that the company had no intention of laying off, beautifying and maintaining the lot opposite those purchased by respondent as a park, when it is shown that that lot had been by it irrevocably dedicated to the public for that purpose, and that work to that end was actually prosecuted by its landscape architect. And it is absurd to suppose that the company did not expect or intend that a hotel should and would be erected, as stated by Bond, when it is considered that the lot had been reserved from sale for that purpose, and that the company, as matter of established fact, expended a large sum of money in making excavations for the foundations of the structure in ac-

cordance with elaborate plans it had had prepared.

We do not find from the evidence that any statement made by Bond acting for the company was in its nature an *engagement* to carry out the expectations and purposes of the company in respect of the street, the park and the hotel, or either of them, or *a promise* that the street should be graded, the hotel built or the lot made into and maintained as a park, but, to the contrary, our conclusion is, as we have indicated, that in all he said he was but calling attention to the expectations and purpose of the company, which he and the company believed would be realized and effectuated, to the improvements in question as matters proper to be considered in estimating the value of the property : the probability, the *bona fide* expectancy, belief and intention that these improvements should and would be made, and not the assurance, of a contractual nature, to that effect, constituting the element of enhancement of value. And his statements being, as we find, true in respect of the existence and entertainment of such *bona fide* expectations, opinions, belief and intention on the part of the company, and hence not being made to deceive, the respondent is not entitled to relief against complainant's vendor's lien either by way of a rescission of the contract or through recoupment of alleged damages.

This conclusion might perhaps be rested on other or additional grounds, but we content ourselves with what has been said, and affirm the decree of the city court.

Affirmed.