# CHARLESTON.

## MARTIN *v.* SOUTH BLUEFIELD LAND CO.

### Submitted September 29, 1917.   Decided October 9, 1917.

1. SPECIFIC PERFORMANCE—*Vendor and Purchaser—Promise to Improve—Rescission.*

    If through his selling agent the owner of land, subdivided into lots, represents to a purchaser his intention to improve specified streets, equity will not rescind or require specific performance when the promise was made in good faith and much of the proposed work actually was performed.   (p. 64).

2. SAME—*Vendor and Purchaser—Promise to Improve Land—Fraud.—Rescission.*

    If such promise be made with a secret and fraudulent purpose to mislead and deceive the vendee, who in reliance thereon is induced to accept a conveyance of land which otherwise he would not accept, equity will rescind, or compel specific performance of the agreement where no insuperable difficulty prevents the execution thereof.   (p. 67).

3. SAME—*Relief—Difficulty of Execution.*

    Courts will not decree specific execution of a contract where, for any valid and lawful reason, compliance with the mandate is impossible, as where defendant can not perform the act required without the consent or permission of another who lawfully may and does withhold such consent.   (p. 69).

4. SAME—*Contract—Nature of Performance.*

    Except where public or private interests demand and there is no other means of adequate redress, courts will not decree specific execution of contracts the performance of which requires the exercise of constant supervision, care and skill.   (p. 70).

5. VENDOR AND PURCHASER—*Fraud of Vendor—Action for Relief.*

    Where a vendor of land, through an agent, falsely represents as true a fact peculiarly within his knowledge, which if true is disclosed by a public record, and the vendee is misled thereby to his detriment, his failure to examine such record to verify the representation will not preclude his right of action or claim to equitable relief for the fraud and deceit.   (p. 70).

Appeal from Circuit Court, Mercer County.

Bill for specific performance by J. E. Martin against the

South Bluefield Land Company. Decree for defendant dismissing the bill, and plaintiff appeals.

*Reversed and remanded.*

*A. G. Fox* and *Sanders & Crockett,* for appellant.

*French & Easley,* for appellee.

LYNCH, PRESIDENT:

This case, which is before us to review a decree dismissing the plaintiff's bill on final hearing, presents for decision the question whether equity has jurisdiction upon the facts alleged and controverted to require specific performance of an oral agreement, collateral to a deed of conveyance, to improve lands of the vendor other than those conveyed and in close proximity to them and certain public streets and ways, when the purpose of the agreement was to induce the vendee to purchase and but for which he would not have purchased the part conveyed, or to cancel the deed and rescind the contract of sale, when it appears that defendant has only partially performed the undertaking and has not acquired or attempted to acquire and does not now own the land on which it promised to make such other investments for the benefit of the property it did own on the date of the agreement.

The defendant, South Bluefield Land Company, a corporation, bought and prior to May 23, 1914, owned a large area of real estate situated near the city of Bluefield, which by the projection of longitudinal and transverse streets it divided into sections and otherwise into minor subdivisions or lots marked on the ground and exhibited on a plat or map thereof, and offered the same for sale in parcels to prospective purchasers. Of these divisions J. E. Martin for $8680 purchased on that date sections 1122 and 1123, each containing twelve of the minor subdivisions or a total of twenty-four lots. The consideration therefor he paid by the transfer of fifty-eight shares of Bluefield Telephone Company stock at the value of $135 a share, and some discounts allowed by the defendant to encourage purchasers promptly to improve the lots bought by them, and the balance by a note for $720

payable at one year with interest, which he paid when it
became due.

The representations as to the intention and purpose of the
defendant, believed and relied on by Martin, and which in-
duced the purchase of the two sections, as he avers and testi-
fies, were made, if at all, by C. M. Corling, acting for and on
behalf of the land company as its authorized selling agent,
but on whom its officers testify it had not conferred the
power to bind it by promises to do any work on its property
other than that expressly directed by the company and that
if he exceeded that limit it can not be held liable therefor.
Of the promises which Corling substantially admits he did
assure Martin the defendant would perform the important
ones are that it would grade and macadamize Adams street,
lay cement sidewalks on each side of it and a storm sewer
under one of them, grade a portion of Golf street extending
to Augusta street and the latter to and in front of plaintiff's
property.    His statements as regards Augusta street dis-
agree with Martin's only as to the line to which the thoro-
fare was to be improved.   One of the principal purposes of
these improvements was to render possible access to the two
sections and other adjacent property otherwise than on foot,
they being located upon an elevation without other means of
approach for vehicles.    These streets are marked on the
ground and designated on the plat of defendant's property.
This plat or map Corling, as the representative of the de-
fendant, exhibited when negotiating sales of lots.

Conceding to these representations the force and effect of
covenants, of the nature of which they in some respects par-
take, to perform the work contemplated, and that Corling
had ample authority to commit the defendant to performance
of the stipulated developments and improvements of the
property in these particulars, and that defendant wholly
failed to perform its undertaking, we may inquire whether
the concessions, admissions and failure warrant relief either
by decree of specific performance or rescission.   The answer
to this inquiry, according to many authorities, is conditioned
wholly upon the motive and purpose behind and prompting
the promises.   If they were made in good faith, and not to

deceive or mislead, a purchaser has no right to rescind, notwithstanding the failure of the promisor to carry into performance the expressed purpose to improve the property. If the vendor honestly meant to do the thing he agreed would be done, there is no right to rescission or a decree of specific performance in equity. The supreme courts of Alabama and many other states, including our own, lay down the rule to be that such street improvement promises ''are but the expression of the belief, expectation, intention or opinion of the agent or company that these things would be done, and, unless knowingly false and uttered with the intent to deceive, neither entitle the purchaser to rescind the sale, nor abate the purchase price by the decrease in the value of the lots by reason of such things not having been done.'' *Joseph* v. *Decatur,* 102 Ala. 346; *Buena Vista Land Co.* v. *Billmyer,* 48 W. Va. 383; note to *Roberts* v. *James,* Ann. Cas. 1914B 862. This statement of the law applicable to cases of this kind is approved and sustained generally by the weight of authority.

It suffices now to observe that the facts proved show assuredly that at the time of the sale to Martin defendant did intend to carry into execution its promises for street improvement. It then was engaged in work on Adams street, and thereafter continued to prosecute it, although not to final consummation. That street was graded part of its length through defendant's property, and all of it is now open for public use. Practically half of its width, for a distance of at least four hundred feet, is macadamized, a storm sewer laid on one side, and a cement sidewalk over it. The remainder, though graded, has not been macadamized through the lands of the company. Plaintiff, as a witness, admits that half of Golf street has been graded, a fourth of it macadamized on one side, and that considerable grading has been done on Augusta street. The omission to do fully what defendant bound itself to accomplish in respect of these improvements will not of itself be sufficient to serve as the basis of relief by a decree to perform or rescind, if, as the evidence sufficiently shows, defendant acted in good faith in the making of the promises, whatever may have been its delinquency

in keeping the engagements. Other redress plaintiff may have as to this breach, but not that which he seeks by his bill. *Emigrant Co.* v. *Adams County*, 100 U. S. 61.

Were the decree of which plaintiff complains based solely upon the allegations and proof relating to a breach of these covenants, we would not hesitate to affirm it. There are, however, other promises, the inability to perform which, for reasons hereafter assigned, indicates, as we think, a culpableness on the part of the defendant from which equity and good conscience ought not to excuse, if it has power to enforce or rescind the agreement. Speaking and acting through Corling, its authorized agent and representative, defendant declared, as it seems to us, an unequivocal purpose to impound the water from influent springs on its property near the sections purchased by Martin, and thereby to create a lake, and around it promised to construct a driveway or boulevard, and near thereto also a hotel, the cost of which would approximate one hundred thousand dollars, when defendant knew, and Corling had access to the primal source of information from which it may not improperly be assumed he also then knew, it did not then have the title or an immediate prospect of acquiring title to the land whereon these structures were to be made. Nor has defendant since acquired, or, so far as disclosed attempted to acquire, the title thereto, which Martin testifies Corling said was then vested in defendant. It admits, through Bernard Mason, its chief administrative officer, that he and his father own the ground on which the contemplated improvements were to be located.

Although there is some conflict in the testimony, it seems to us amply sufficient to justify the conclusion that Corling did make these promises to Martin; and defendant has never performed them. Martin says unequivocally that Corling assured him defendant would do the things promised for and on its behalf. T. M. Morrison, who as engineer surveyed and subdivided the lands for defendant, pursuant to the direction of its officers designated on the ground and on the plat then made the locations selected for the construction of these several improvements. Royal C. Morrison, who

purchased some of the lots, testifies that Corling gave him the .same assurances as to' the work to be performed for the benefit of the property. And Corling admits that, pursuant to the same official direction, he caused placards to be placed on these different sites, indicating the purpose for which each of them was dedicated and set apart, and that he and Martin discussed the feasibility of the construction of the lake, boulevard and hotel and the advantages to be derived from them in the exploitation and enhancement of the value of the entire property, but denies he made any promises with respect to them. They disagree only as to the time when this conversation occurred, whether before or after the date of the deed. Martin says it was before. The persuasive force and effect of Corling's statements and acts, the directions of the defendant referred to, and of the maps so made and exhibited, is not minimized sufficiently to discredit them by the general denial that he neither made nor was authorized to make the representations and promises relied on by Martin. We can not disregard these important facts, fully sustained by proof, or reach a conclusion other than that the object of the defendant was thereby to allay suspicion and entice purchasers to buy lots with the implicit confidence that the things promised actually were contemplated and would within a reasonable time be consummated.     •

If these statements, when made, were false and illusive, and defendant, with knowledge of their falsity, through Corling fraudulently imparted them to Martin for the purpose of inducing him to purchase property which he otherwise would not have bought, is plaintiff entitled to a decree requiring defendant to perform its agreements, or, in event of its inability to do the things agreed, rescinding the deed and contract of purchase? As regards these' elements and defendant's fraudulent intent the proof leaves little if any doubt. The weight of authority sustains the proposition that if a vendor of land informs the vendee that he intends to improve other lands retained adjacent to the part sold his promise, if made in good faith, though not thereafter performed, will lay the ground for an action on the covenant but not for specific performance or rescission. *Emigrant*

*Co.* v. *Adams County,* 100 U. S. 61; *Crampton* v. *Realty Co.,* 51 Wash. 525, and note 21 L. R. A. (N. S.) 823. This holding is based in part upon the theory or supposition that the statement is a mere expression of a promise founded on an opinion or intention to perform the agreement in the future. On the contrary, if it be not made in good faith, but with a secret purpose to mislead and deceive the vendee, who by relying thereon is induced to enter into a deal which he otherwise would not do, it is well settled law that equity will enforce performance, or in lieu thereof rescind the contract with the usual attendant consequences. It is the motive underlying the promise, the actual fraud which permeates and vitiates, that determines the right to relief. *Nelson* v. *Manufacturing Co.,* 96 Ala. 516; *Joseph* v. *Decatur,* 102 Ala. 346; *Rogers* v. *Salmon,* 8 Paige Ch. 559, 35 Am. Dec. 725; *Roberts* v. *James,* 83 N. J. L. 492, Ann. Cas. 1914B 859, note 862. And the intent to defraud may, as in other cases, be gathered from surrounding circumstances, where it is not susceptible of positive proof, as not infrequently happens in cases involving duplicity and deception. Our own decisions determine the question of the admissibility of parol proof of such representations. It is not repugnant to the rule against contradicting or varying the terms of a deed. Fraud in transactions of this kind is always susceptible of proof. A deed is seldom the repositary of all negotiations leading to its execution. It is not its office to express the terms of the contract of sale, but to pass the title pursuant to the contract. Parol agreements of this kind, partaking of an inducement or incentive in consummating the sale, are not merged in the deed, and do not qualify or in any way affect the title to the land. Wherefore, the admission of parol evidence to prove them does not infringe the rule that such evidence is not admissible to contradict or vary a written instrument. *Rymer* v. *South Penn Oil Co.,* 54 W. Va. 530; *Wilfong* v. *Johnson,* 41 W. Va. 283; *Wilson* v. *Carpenter,* 91 Va. 183; *Nelson* v. *Manufacturing Co.,* 96 Ala. 532; *Anderson* v. *Suburban Corporation,* 155 N. C. 131, note 3 L. R. A. (N. S.) 896.

But in this case specific performance as regards the prom-

ise to build the hotel or make the lake and boulevard is impossible, notwithstanding the fraud perpetrated, for the very cogent reason that defendant never did and does not now own the property on which these improvements were to be constructed. A court will not decree specific execution of a contract where, for any valid and lawful reason, compliance with its mandate is impossible. The total incapacity of the defendant, other than that of physical or financial disability to obey the direction of the decree, is a complete defense. Motives of public policy and convenience exclude the idea of compulsion in such cases. *Weeden* v. *Graham*, 107 Ill. 169; *Whalen* v. *Railroad Co.*, 108 Md. 11; *Kennedy* v. *Haselden*, 128 U. S. 667. For illustration, the agreement will not be specifically enforced where the act to be performed is prohibited by law. *Danforth* v. *Railroad Co.*, 30 N. J. Eq. 12; *Henkin* v. *Anderson*, 34 W. Va. 709; *Dorr* v. *Railway Co.*, 88 S. E. 666. Nor where the defendant can not do the thing required without the consent of another who lawfully may and does withhold his consent will a decree be made. This rule applies particularly where the contract sought to be enforced calls for acts to be done on lands of another than the vendor. *Hemphill* v. *Miller*, 16 Ark. 271; *Farsen* v. *Fogg*, 205 Ill. 326; *Smith* v. *Kelley*, 56 Me. 64; 44 Cent. Dig., Spec. Perf., §31. But not where such other owner does or will consent to the appropriation of his lands for that purpose. *Lyman* v. *Gedney*, 114 Ill. 388.

There is, moreover, an additional reason, approved by much authority, for denying specific performance of the promise to impound the waters of the springs, create the lake, grade the driveway, and construct the hotel. Such improvements require more minute and constant supervision, watchfulness, care and skill than courts will undertake to assume, except where the public interest may seem to require. *Roquemore* v. *Mitchell*, 167 Ala. 475, 140 Am. St. 52n; *Salt Co.* v. *Railroad Co.*, 90 S. W. 863, 3 L. R. A. (N. S.) 828n; *Leonard* v. *Board of Directors*, 79 Ark. 42, 9 Ann. Cas. 159n; *Ward* v. *Newbold*, 115 Md. 689, 26 Ann. Cas. 919n. This doctrine, however, is held generally to be a rule of decision, rather than a limitation upon the jurisdiction of

a court of equity to grant relief. It is not always an insuperable objection to the enforcement of contracts under the direction of a court, as illustrated by *Birchett* v. *Boling*, 5 Munf. 442, where the court required a partnership to erect a building on land procured by it from a partner for that purpose and upon that condition; by *Harper* v. *Railway Co.*, 76 W. Va. 788; *Johnson* v. *Railway Co.*, 61 W. Va. 141, and many other railroad cases collated in note to *Leonard* v. *Board of Directors, supra,* where the defendant companies agreed to construct, on rights of way or other property purchased or condemned for railroad construction and operation, conveniences and improvements for the use and benefit of the owners of other parts of the lands through which the ways were acquired. But, notwithstanding these exceptions, due to the peculiar nature of the transactions and to the impossibility of securing execution of the contracts in any other feasible manner, or to the inadequacy of remuneration in damages by an action at law, the rule is general that a court of equity will not undertake to decree specific performance of an executory contract to do construction work, where constant supervision is essential to its due consummation, since, as held in the decisions cited, "there is no method by which its decree can be enforced."

Whether as regards these particular improvements equity may deny rescission on the ground that the representations, although made falsely with the secret intention not to initiate and prosecute the work promised, were not of an existing fact but the anticipations of a future event that has not and perhaps will never reach realization, and whether, as intimated in *Buena Vista Co.* v. *Billmyer*, 48 W. Va. 383, plaintiff is precluded from the relief prayed because of his failure to inquire of defendant's superior officiary as to the truth or falsity of Corling's representations, it is unnecessary to decide. For the representation by Corling that the municipal authorities had entered an order directing the institution of proceedings to acquire rights of way for the extension of Adams street to the line of defendant's property was in truth a false and fraudulent representation of an existing fact.

Defendant thus assured plaintiff that the city had by an ordinance committed itself to the extension and improvement of Adams street within the city limits so as to connect with the street of the same name laid out on defendant's property, when the fact appears that the town council had not initiated or attempted to initiate the condemnation proceedings or the work of extension and improvement. It may be said, however, that afterwards defendant did attempt to induce the board of affairs to recommend, and it did recommend, that the town council acquire the right of way and perform the work, on the condition that the property owners along the route would contribute to the expenses incident to the prosecution of the improvement. But in this proposal the council of the city refused to concur, and rejected it. The recommendation on the part of the board of affairs, although inspired by the defendant, does not negative the falsity of Corling's statement that the municipal authorities of the city of Bluefield had passed such an ordinance. And the circumstances relating thereto and the effect on the conduct of Martin as regards 'the purchase of the two sections excused him from further inquiry into the truth or falsity of the representation. The statement, responsibility for which Corling denied, did not demand further inquiry. Martin confided in the truth of the representation. He assumed, no doubt, that no one would presume to speak positively of what a public official record would upon inspection fully disclose unless he knew what he represented was true. The fraud which furnishes the foundation for an action of deceit or for rescission in equity exists where a person makes a false representation of a material fact susceptible of knowledge, when he does not know whether it is true or false, with intention to induce the person to whom it is made in reliance upon it to do something to his pecuniary hurt, where such person acting with reasonable prudence is thereby deceived and induced so to do to his damage. 20 Cyc. 10. Indeed, it requires a less degree of fraudulent action to suffice to warrant a decree of rescission than to sustain an action of deceit. 20 Cyc. 11. If the fact represented as true be one peculiarly within the knowledge of the vendor, and of which

the purchaser is ignorant, it is generally held that, although the real fact appears on the public records, his failure to examine them does not affect his right of action or claim to equitable relief. 20 Cyc. 57.

There appears no such delay in the institution and prosecution of this proceeding as precludes the granting of any relief which the facts pleaded and proved may warrant or justify. The delay, if any, in excess of that permitted by the rule of diligence applicable in such cases, is excused by the repeated demands by Martin and the promises by defendant to initiate and expedite the promised improvements. If relying on these promises plaintiff paid the balance due on the consideration expressed in the deed, cultivated the property purchased, and appropriated the proceeds thereof to his own use, upon the supposition that defendant would keep its engagements, it can not now invoke the application and protection of the rule requiring promptness where specific performance or rescission is sought by the bill.

For the false and fraudulent representation as to the alleged action by the municipal authorities of the city of Bluefield in respect of the opening and improvement of Adams street to the property line of the defendant company, we reverse the decree, and remand the cause for further proceedings according to these and other principles governing courts of equity in cases of this kind.

*Reversed and remanded.*