# CHARLESTON.

## HENKING v. ANDERSON.

Submitted January 15, 1891.—Decided February 7, 1891.

1. SPECIFIC PERFORMANCE.

> The Plaintiff in a suit for specific performance of a contract, who has not performed and is not able to perform such contract on his part, is not entitled to a specific performance on the part of defendant.

2. SPECIFIC PERFORMANCE—FRAUDULENT CONVEYANCE.

> Plaintiff in such suit having no debt against defendant has no right to call in question defendant's sale and conveyance of his land.

*D. D. Johnson* and *J. A. Hutchinson* for appellants, cited: Warth's Code, c. 74, s. 1; Id. c. 133, s. 22; Mech. Ag. §§ 160, 161; 28 Pa. St. 329; 33 Am. Dec. 647; 10 Mass. 442; 5 Greenl. 336; 12 Mass. 137; Bish. Cont. § 171; 18 Gratt. 801; 18 Am. St. 174; 24 Gratt. 202; Hutch. Great. § 814; 1 Pars. Cont. 49, 468; Chitt. Cont. 200–292; Poll. Cont. 192; Fry Spec. Perf. § 355; 25 Gratt. 642; Perry Tr. §§ 476, 511; 6 Am. St. 885 note; 1 Johns. 139; 26 Am. Dec. 107; 38 Am. Dec. 692; 64 N. Y. 41; 68 Am. Dec. 104; 21 W. Va. 469; 11 W. Va. 229; Id. 584; 4 Cow. 207; 15

Am. Dec. 361 ; 20 W. Va. 251 ; 20 Gratt. 147 ; Waite Fraud. Conv. §§ 224, 225, 376 ; 8 Am. & Eng. Ency. L. 654 ; 10 W. Va. 87 ; 29 W. Va. 450 ; 22 Pa. St. 179 ; 17 W. Va. 717 ; 72 Am. Dec. 639 ; 71 Am. Dec. 355 ; 107 U. S. 262 ; 34 Mich. 457 ; 83 Va. 491 ; Big. Fraud 288, 289 ; 20 N. J. Eq. 156 ; 15 N. Y. 362 ; 21 Gratt. 463 ; Waite Fraud. Conv. § 241 ; 84 Pa. St. 253 ; 29 W. Va. 250 ; 28 W. Va. 1 ; 7 West. Rep. 51 ; 122 U. S. 121 ; 79 Ala. 516 ; 28 Am. 375 ; 9 East 348 ; Waite Fraud. Conv. § 206 ; 102 Mass. 276.

*O. Johnson* for appellee, R. S. Brown, cited :

14 W. Va. 22 ; 3 Gratt. 12 ; 6 W. Va. 110 ; Lew. Trusts 645 ; Hill Trust, 221, 579 ; Per. Tr. § 921 ; 2 Swan. 100 ; 3 Keys 157 ; 6 Gray 429 ; 9 Barb. 9 ; 47 Mich. 267 ; 1 Dev. & B. Eq. 480 ; 11 Paige 314 ; 4 Johns. Ch'y 136 ; 4 Ves. 97 ; Sto. Eq. Juris. § 1280 ; 1 Wend. 470 ; 4 Abb. Ct. App. Dec. 387 ; 7 Watts 48 ; 7 Cush. 599 ; 18 W. Va. 507 ; 9 W. Va. 636 ; 29 W. Va. 703 ; 11 W. Va. 562 ; Id. 584 ; Code, c. 125, s. 35 ; 47 Am. Dec. 408 ; 71 Am. Dec. 355 ; 72 Am. Dec. 639 ; 14 Am. Dec. 181 ; 21 Am. Dec. 530 ; 31 Kan. 298 ; 109 Ill. 461 ; 11 La. 355 ; 41 Ark. 316 ; 105 Ill. 272 ; 17 Fed. Rep. 293 ; 23 How. 477 ; 24 Ala. 544 ; 2 Doug. 166 ; 2 Ill. 344 ; 29 Gratt. 628 ; 14 W. Va. 66 ; 63 Ala. 561 ; 99 Pa. St. 47 ; 113 Pa. St. 220 ; 68 Md. 534 ; 92 N. C. 497 ; 64 N. C. 500 ; 67 N. C. 190 ; Bump Fraud. Cont. 605 ; 10 W. Va. 321 ; 15 W. Va. 512 ; 10 W. Va. 87 ; 21 W. Va. 211 ; 10 W. Va. 130 ; 9 S. E. Rep. 702 ; 17 W. Va. 718 ; 98 N. C. 266 ; 4 Kent. Comm. 169, 170, 172 ; 31 Am. Rep. 712 ; 73 Mo. 275 ; 58 Mo. 331 ; 40 Mo. 405 ; 47 Mo. 304 ; 2 Johns. Ch'y 181 ; 61 Mo. 118 ; 23 Mo. 117 ; 46 Am. Dec. 519 ; 13 Am. Dec. 342 ; 20 N. J. Eq. 150 ; 4 L. R. A. 832 ; 116 U. S. 609 ; 76 Ala. 103 ; 58 Tex. 306 ; 63 Mich. 552 ; 30 W. Va. 182 ; 90 N. C. 232 ; 115 Mass. 505 63 Me. 328 ; 54 Md. 170 ; 73 Mo. 74 ; 80 N. Y. 451 ; 49 Ia. 41 ; 38 Mich. 253 ; 47 Conn. 47 ; 97 Ind. 46 ; 49 Tex. 26 ; 49 Wis. 549 ; 48 Mich. 1 ; 82 Ind. 234 ; 48 Mich. 321 ; 59 Miss. 80 ; 115 U. S. 61 ; 82 Ind. 212 ; 30 W. Va. 123 ; 18 Fla. 866 ; 76 Ala. 103 ; 33 Mo. App. 645 ; 112 U. S. 144 ; 71 Ia. 124 ; 44 Am. Dec. 785 ; 60 Am. Dec. 57 ; 73 Mo. 74 ; 88 Mo. 150 ; 94 Mo. 98 ; 27 W. Va. 639 ; 47 Miss. 169 ; 28 W. Va. 715 ; 31 W. Va. 137.

*W. A. Parsons* of counsel for appellee Brown, cited:

8 Am. & Eng. Ency. L. 757; Code, c. 74, s. 1; 17 W. Va. 765–770; 115 U. S. 61; 76 Ala. 103; 92 Ind. 109; 48 Mich. 1; 18 Fla. 866; 32 N. W. Rep. 240; Am. Dig. (1887) p. 544 § 65; 3 South. Rep. 569; 39 N. W. Rep. 219; 8 S. W. Rep. 564.

*J. H. Riley* for appellees Brown and Beaty, cited:

11 W. Va. 585; Id. 262; Bish. Cont. §§ 958, 964, 966; 16 W. Va. 658; 31 W. Va. 70; 2 Pars. Cont. §§ 2, 3, 4, 7; 2 Wheat. 336; Add. Cont. 193, 787; 2 Pom. Eq. § 971; 6 Wall. 299; 9 W. Va. 100; 22 W. Va. 366–369; 27 W. Va. 681; 32 W. Va. 34.

*C. L. Brown* for appellee Beaty, cited:

22 W. Va. 366; 32 W. Va. 34; 2 Munf. 310; Bump Fraud. Cont. 581; 36 Cal. 223; 29 Mass. 89; 18 Me. 231; 14 Me. 370; 12 Ia. 218; 39 Mo. 91; 97 Mass. 145; 1 Neb. 254; 2 Rich. 59; 18 Minn. 414; 64 Me. 239; 6 J. J. Marsh, 94; 44 Ill. 208; 22 Pa. 179; 24 Miss. 134; 37 Me. 124; 3 Grant 237; 4 Mason 312; 2 Md. 365; 21 Miss. 30; 42 Mo. 551; 43 Ill. 29; 52 N. Y. 274; 26 Ala. 443; 15 Ia. 229; 26 Mo. 533; 33 Ia. 175; 51 Mo. 592; Id. 43; 39 Ia. 442; 64 Me. 23; 3 Barb. 588; 8 Ind. 43; 8 Am. & Eng. Ency. L. 763; 54 Md. 170; 79 Ky. 562; Sto. Cont. § 448; 7 Am. Dec. 305; 13 Ohio St. 92; 13 Johns. 190, 397; Add. Cont. 34; 4 S. E. Rep. 575; 17 Am. Dec. 311, 361; 1 Sto. Eq. § 234.

HOLT, JUDGE:

This is a suit in equity brought by Henking, Bovie & Co., on the——— day of January, 1889, in the Circuit Court of Jackson county, against G. W. Anderson, E. Beaty, R. S. Brown, and others, to enforce, on the part of defendant Beaty, the specific performance by him of a certain contract of the 17th of March, 1888, whereby Beaty undertook to pay the debts of defendant Anderson, debtor who had made an assignment for the benefit of his creditors; and to set aside as fraudulant a conveyance of a certain tract of land made by Beaty and wife to defendant, Brown, and to administer the trust for the benefit of the beneficiaries.

The several defendants answered, depositions were taken, and the cause came on to be heard on the 21st day of March, 1890, when the Circuit Court dismissed the bill as to defendants Beaty and Brown, retaining the cause for the purpose of administering the trust-property. From this decree plaintiffs appealed.

The material facts are as follows : Defendant George W. Anderson was a merchant doing business in the county of Jackson, and, becoming insolvent and unable to pay his debts, by deed dated 10th of March, 1888, and acknowledged and admitted to record 12th of March, 1888, conveyed to defendant J. A. Seamon, trustee, all his personal property thereinafter named, to wit; his stock of merchandise in his store-house situated near the mouth of Little Sandy creek, in Jackson county, state of West Virginia, and every article owned or claimed by him in said store house, to be held by the said J. A. Seamon to secure and pay certain creditors of the said George W. Anderson—that is to say, each and every creditor in each and every indebtedness to any and all his creditors. Said J. A. Seamon, as such trustee or assignee, was to take immediate possession and control of said property theretofore mentioned, and each and every part and parcel thereof, and hold the same for the purposes thereinbefore mentioned, and without preference to pay said indebtedness to each and every creditor *pro rata,* after giving due notice, and should in all respects conform his acts to the law in such cases made and provided, and notify all non-resident creditors of the assignment; and the said Seamon was thereby empowered with full control and possession of all said property, for the purposes therein mentioned.

His duties as such trustee are prescribed by the Code, c. 72, s. 6. If required by any *cestui que trust,* the law made it his duty to give bond before receiving any proceeds of sale. This was required, and he gave the bond with security approved. Then it was his duty to sell this personal property for cash, pay costs and commissions, and pay over the residue upon the debts *pro rata.* While the trustee was engaged in making an inventory of the property, some of the creditors and agents of creditors, appeared on the

ground and proposed to Anderson the debtor, that they would give him time if he would secure the payment of the debts, and on the 17th March, 1888, a contract with that object was entered into between Anderson, the debtor, E. Beaty, the outsider, who was to settle and pay off their debts within the time given, and six of the principal creditors, not a majority in number, but a majority in interest, so far as amount of debts yet appear. Seamon, the trustee, was not a party to this contract; but Anderson and these six creditors, reciting that they had sold and transferred all their claims on Anderson, and all their interests in said assignment and assets conveyed to him by said deed to E. Beaty, authorized and directed him to turn over and deliver to said E. Beaty at once all the goods and other property so conveyed to him, and in his possession and control. This was done. I here give this contract in full, for it presents the turning point of the case :

(Exhibit B.) "This contract made this 17th day of March, 1888, between E. Beaty of Jackson county, West Virginia, of the first part, and G. W. Anderson, of the said county, and the creditors of the said G. W. Anderson, of various places, whose names are signed to this writing, of the second part, witnesseth: That whereas, said G. W. Anderson has become financially embarrassed, and did on March the 10th, 1888, make an assignment to J. A. Seamon of a stock of goods for the benefit of his creditors, now, therefore, to settle and pay off the liabilities of said G. W. Anderson, and help him out of said embarrassment, and in the consideration of the assignment and conveyance, and agreements hereinafter made, the said E. Beaty hereby agrees and binds himself, as security, to pay the liabilities of said G. W. Anderson due and owing to the respective creditors whose names and amounts are hereto signed and annexed, the same to pay each one in four equal payments in six, twelve, eighteen, and twenty four months from this date, with interest from date; and he, said Beaty, agrees to sign any notes required by said creditors as such security for said Anderson, agreeing therein to pay their respective claims as aforesaid. In consideration of said Beaty's becoming security for said claims as aforesaid, the said G.

W. Anderson and said creditors, and each of them, whose names are signed hereto, hereby sell, assign, transfer, and convey unto the said E. Beaty all their right, title, and interest (and the interest of each of them) in and to the stock of goods *etc.*, conveyed to J. A. Seamon, trustee as aforesaid, and also all store goods, accounts, notes, money, lease of store and dwelling-house, belonging or coming to said G. W. Anderson, or in his possession, and all the title of said G. W. Anderson's said creditors therein; and said parties hereby authorize and direct said J. A. Seamon, trustee, to at once deliver all said property in his possession or control to said E. Beaty.   Said G. W. Anderson, to further secure and indemnify said E. Beaty as such security, agrees to execute, by himself and wife, a deed of trust on his said wife's property near Ravenswood, conditioned to so indemnify Beaty, and to do so at once.

"Witness the following signatures:

[Signed]

| | |
|---|---:|
| "G. W. ANDERSON. | |
| "E. BEATY. | |
| "HENKING, BOVIE & Co. | $381 19 |
| "By M. C. LATHEM. | |
| "JOHN DAGES & Co. | 358 55 |
| "M. C. LATHEM. | |
| "VANCE-HUGHES SHOE Co. | 500 00 |
| "J. McKINLEY & SON. | 253 35 |
| "WILLIAMS & WETZEL. | 334 36 |
| "L. S. DELAPLAIN, SON & Co. | |
| "By J. E. McCoy." | |

(Exhibit C.)   " To J. A. Seamon, trustee in a deed of trust dated March the 10th, 1888, executed to you by G. W. Anderson—Sir:   I, G. W. Anderson, and we, the undersigned creditors of G. W. Anderson, having sold and transferred all our claims on said G. W. Anderson, and all our interests in said assignment and assets conveyed to you by said deed to E. Beaty, you are hereby authorized and directed to turn over and deliver to said E. Beaty at once all the goods and other property so conveyed to you, and in your possession or control.

"Given under our hands this 17th day of March, 1888.

(Signed) "G. W. ANDERSON.

(Signed) "HENKING, BÓVIE & Co.

"Per LATHEM.

"JOHN DAGES & Co.

"Per LATHEM.

"VANCE-HUGHES SHOE Co.

"J. McKINLEY & SON.

"WILLIAMS & WETZEL.

"L. S. DELAPLAIN, SON & Co.

"Per J. E. McCOY."

Beaty put Anderson in possession, who held it for him during a period of ten days, when Beaty gave back the possession to Seamon, the trustee. Beaty, on the 18th or 19th of March, 1888, called on Anderson at his home with a notary, and a deed of trust prepared to be executed by him and his wife, Hattie, conveying to E. Blake, trustee, her house and lot, some three or four acres adjoining the town of Ravenswood, to secure and indemnify Beaty as provided for in the contract of March 17, 1888. The wife of Anderson said she did not feel like signing the deed of trust then and put them off. But husband and wife failed and continued to refuse to execute it, and the indemnity contracted for was never given; but some six months after they conveyed it in fee to C. A. Staats, one of Anderson's creditors, who signed the contract of March 17, 1888, as one of the creditors who put their names to it, some time after its date, and perhaps after the goods had been returned by Beaty to the trustee. On the 26th of March, 1888, Beaty, in the presence of Seamon, the trustee, took legal advice on the matter, and they were advised that a part of Anderson's creditors had no right to take the goods out of the hands of the trustee, and turn them over to Beaty; and thereupon Beaty returned the goods to Seamon, trustee, except some goods worth between nine dollars and fifteen dollars, which had been sold by Anderson as Beaty's agent, and this sum, between nine and fifteen dollars, Anderson states he handed over to Seamon. And thereupon Beaty prepared a written notice, and sent it to the creditors of An-

derson, disclaiming all interest in the trust goods, stating that he would not pay the Anderson debts, or the notes given by him for a part thereof. This action on the part of Beaty and Seamon, the trustee, soon came to the knowledge of the creditors by means of the notice, directly or indirectly.

So the matter stood until January, 1889, a period of ten months. During this interval, viz., on September 13, 1888, defendant Beaty and Ella, his wife, who owned in fee one ninth, sold and conveyed to defendant R. S. Brown their farm of two hundred acres on Sandy creek, in Jackson county, at the price of six thousand forty eight dollars and seventy five cents, and a short time after defendant Brown sold and conveyed the land to A. L. S. Varner, who is in possession thereof under his conveyance, which was recorded. Some time after (the record does not show when the writ of summons was issued, but the bill was filed at January rules, 1889) the creditors Henking, Bovie & Co., brought this suit in equity against George W. Anderson, E. Beaty, J. A. Seamon, trustee, Robert S. Brown, and the various creditors of Anderson, named in the bill (1) to compel Beaty to specifically perform the contract of the 17th March, 1888; (2) to attach the two hundred acres conveyed by Beaty to Brown; (3) to set aside such conveyance as made with intent to defraud the creditors of Beaty, and to subject the same to the payment of their debts, and for such other relief as they might show themselves entitled to. Ella Beaty and Varner are not parties to the suit.

Defendant Brown answered, fully denying all fraud and notice of or participation in any fraud on the part of Beaty.

Defendant Beaty answered, alleging that he was of unsound mind when he signed the contract of March 17, 1888; that plaintiffs and others contrived to overreach and defraud him, and that in his weakness he was thus induced to sign the instrument; that the 17th of March, 1888, was Saturday; that on Monday following the 19th of March, he and N. C. Prickett went to the house of Anderson with a deed of trust for Anderson and wife to sign, which they refused to do; that he repudiated the contract for the reasons

already given, and notified the creditors thereof. He denies all fraud in his sale to R. S. Brown, and he prays that the contract of the 17th March, 1888, and notes given by him in pursuance thereof, may be canceled and held for naught, and for other and general relief. And both Brown and Beaty demurred to plaintiff's bill. James A. Seamon, trustee, and G. W. Anderson filed their several answers. John Dages & Co., and other creditors of Anderson filed their answer, adopting and acquiescing in the contract of March 17, 1888, praying that their debts be decreed them. But two creditors for small amounts present petitions expressing their dissent to and disapproval of said contract, and praying that the trust-deed be enforced and executed according to its terms and legal effect, for the benefit of those secured.

We have only to turn to the contract of March 17, 1888, to see at once, by its own express terms, what it was that moved and induced defendant Beaty to enter into the agreement—what it was he was to get as the consideration for his promise to pay another man's debts. The one was the sale and transfer to him by a part of the creditors of the goods conveyed by the insolvent debtor to the trustee for the benefit of all the creditors *pro rata*—the one thing a part of the creditors had no right to do, and which, as far as done, was perhaps properly undone; and the other was the execution by Anderson and wife of a deed of trust on the land of Anderson's wife to secure and indemnify Beaty—a thing that could have been lawfully done, but which never was done. On the contrary, it was sold and conveyed to one of the creditors on the defendant side of this record, who unites with the plaintiffs in asking a court of equity to compel Beaty to specifically execute on his part this executory agreement.

In cases of this sort, the doctrine laid down in the books leads us to expect that it shall be both said and proved or admitted that the contract has been or can be executed on the part of those who ask that defendant shall be compelled to execute it on his part.

It is not necessary to discuss what the trustee may legally do in such cases, further than to say that the deed of trust

under which he acts, and our statute on the subject (Code, c. 72, s. 6) must be the guide as to his powers and his duties. But he was no party to this contract. I am sure he acted with good faith; but if he supposed that a majority in interest of the creditors could do as they pleased with the trust-property, he was mistaken. *Landeman* v. *Wilson*, 29 W. Va. 702 (2 S. E. Rep. 203.) And when, on the written order of such majority, he turned the property over to Beaty, he, I suppose, regarded such order as a sufficient indemity for him. Now, if Beaty had sued the trustee for these goods, could he, under that contract, have recovered them from the trustee, or could he have resisted the trustee's demand for their restoration? Beaty might have sued the insolvent, assigning debtor Anderson, for failing to procure the deed of trust promised, but there was no way by which he could make the unwilling wife convey her realty. The contract sought to be enforced against Beaty has not even a pretence of having in a vital point been performed for him, and, so far from plaintiffs showing themselves ready and willing and eager and able to cause that *sine qua non* to be performed, Mrs. Anderson has not only refused to give the indemnity exacted, but has put it out of her power to give it, by conveying to one of the said plaintiffs, who happens for convenience to be placed among the defendants, and that ends the case, so far as the appeal is concerned.

Plaintiff Henking, and those who acted with him, were no doubt acting in good faith in their endeavor to "put their debtor on his feet again," and I see no reason why such arrangements should be discouraged, for they often result in great good to the failing debtor as well as to the creditors. But, unfortunately, in this case Mrs. Anderson failed and refused to give defendant Beaty the indemnity which he expressly exacted as one of the essentials inducing him to take upon himself the payment of the debts of Anderson, her husband.

The point whether the land conveyed to defendant Staats can still be applied to the payment of the debts *pro rata* is not raised, and could not be, as the case now stands, and in regard to that we express no opinion.

Very much of the record is taken up with other questions, which, although now immaterial, ought not to be passed over in silence. As to whether defendant Beaty had judgment and will enough on the 17th of March, 1888, to make a binding contract, such as this, a large volume of testimony has been brought into the case. On the side that he had not mind enough to make a valid contract we have the opinion of the only expert examined, his family physician, a man of large experience, evident skill, and sound judgment, who knew him well at and before the time, and had many opportunities and occasions for observation. He gives it as his opinion that Beaty had not, at the time, mind enough to make such a contract, and he is supported by the testimony of some dozen non-experts, who had opportunity to observe and know, and who gave the facts on which their opinions are based. On the other side, we have the testimony of some thirteen witnesses, non-experts, it is true, but they all give the facts, or had opportunity to observe ; and seven of them in fact were present at the signing of the instrument. The case very well illustrates how difficult it is for the court, especially the appellate court, in a certain class of cases, to arrive at a safe and correct conclusion. But, if it were necessary to decide it, I should hold that he had sufficient mental capacity to make such contract, and this would be based to some extent on what he himself in his pleadings, but especially in his depositions, says he did and said at the time.

As to the charge of fraud made against R. S. Brown, that also falls to the ground by the decision of the first question ; for, if plaintiffs had no debt against Beaty, defendant Brown could not assist him in evading payment. But on this point also I have scrutinized the record closely, and weighed the evidence with care, and am convinced that there is no foundation for such a charge, no matter how the question of Beaty's indebtedness might be decided. Defendant Brown had, on the land bought of Beaty, a deed of trust past due, of long standing, for two thousand five hundred forty eight dollars and seventy five cents borrowed money. Mrs. Ella Beaty, the wife, had, in her own right, at least one ninth, and her contingent right of dower in

the remainder. Brown and Beaty had the negotiation on hand even before Anderson's indebtedness was created. When defendant Brown made the purchase and took the deed on the 13th day of September, 1888, the trust property had been restored to the trustee for nearly six months. Mrs. Anderson had refused to give the indemnity, and no complaint or proceedings on the part of the creditors up to that time appears. He paid a full, fair price, six thousand forty eight dollars and seventy five cents, part in discharge of the deed of trust, and three thousand and five hundred dollars in mortgages on land in the state of Illinois, with which defendant Beaty and his wife bought land in that state equal in quantity, and greater in value, than the land sold. Of this, one ninth, and the value of her contingent right of dower, justly belonged to Mrs. Ella Beaty; how much that would be of the three thousand and five hundred dollars does not appear. Part of the Illinois land, two hundred acres, bought with the three thousand and five hundred dollars, was conveyed to her, and part, eighty acres, to her husband.

In conclusion on this point, I can see in no part of this transaction anything that could have been held in any event to be a lack of good faith on the part of defendant R. S. Brown, or fraudulent in any degree, legally or morally. Inasmuch as the court below retained the cause in order to administer the trust-subject, and seeing that Anderson for the short period that he had charge as the agent of Beaty collected some nine dollars or fifteen dollars which he says he turned over to the trustee, but which the trustee denies, it might have been proper, in my view of the case, to have retained Beaty as a party, and, in taking the account, to have inquired into this matter; yet no one, in argument or elsewhere, has suggested a modification of the decree in that respect, regarding it, no doubt, as too small a thing to look after further. Varner was in possession of the land under his recorded deed before the suit was brought. Mrs. Ella Beaty was a part owner in her own right, and as such sold it. According to the pretensions of plaintiffs, both were necessary parties, but, in the view taken by the court, it would be a vain thing to bring

them in for the sole purpose of turning them out again. The decree of the Circuit Court dismissing plaintiffs' bill as to defendant Elishama Beaty and R. S. Brown is therefor affirmed.

AFFIRMED.

# CHARLESTON.

