# CHARLESTON

## PATRICK *et al* v. STARK *et al*.

Submitted July 17, 1907.   Decided November 19, 1907.

1.  STATUTES OF LIMITATION— *When Not Applicable.*
       Statutes of limitation are never applicable to causes of action falling within the exclusive jurisdiction of courts of equity. (p. 605.)

2.  EQUITABLE TRUSTS IN LAND— *Where Cognizable.*
       Enforcement of a resulting trust in land, being a proceeding for the vindication of mere equitable title, not recognized in courts of law, is cognizable in equity only.   (p. 605.)

3.  TRUSTS— *Proceeding to Enforce—Laches, When Applicable.*
       The equity rule of *laches* is applicable to proceedings to enforce all trusts, effecting title to land, for the establishment of which resort must be had to parol evidence, without regard to classification as express, implied, resultant and constructive trusts. (p. 606.)

4. LEGAL DISABILITY—*Excuse for Delay in Equity—When.*

   Generally, any legal disability, such as infancy or coverture, will excuse delay in suing for the enforcement of a purely equitable right. (p. 607.)

5. EQUITY—*Statute of Limitations—Averments of Delay—When Particular, When Not.*

   When equity does not apply the statute of limitations by analogy, (as it does to demands purely legal and those as to which there is concurrent jurisdiction at law and in equity,) the averments of matter to excuse delay need not be of the degree of certainty and particularity, that is required to make out a case of exception from the statute of limitations, on the ground of fraudulent obstruction of the prosecution of the action. (p. 607.)

Appeal from Circuit Court, Taylor County.

Bill by Thomas Patrick *et al* against Larkin J. Stark *et als.* A decree was entered sustaining a demurrer to the bill, and they have brought it to this Court for review.

*Reversed. Remanded.*

ELMER F. GOODWIN, THOMAS COLEMAN, and H. P. CAMDEN, for appellants.

DENT & DENT, for appellees.

POFFENBARGER, JUDGE:

The circuit court of Taylor county entered a decree sustaining a demurrer to the bill of Thomas J. Patrick, Simon Crouse, Viola Crouse and Eliza J. Stewart, on the ground of *laches* and staleness of demand; and they have brought it to this Court for review.

The bill was filed against Larkin J. Stark and Louie Stark, his wife, to establish a resulting trust in certain land situate in said county. The material facts alleged are about as follows:—In February, 1865, Sylvester Patrick and his brother, Jacob Patrick, residing in Wood county, and being the owners of real estate therein situate, sold the same for the sum of $14,000.00 in cash. Jacob Patrick took this money, belonging equally to himself and Sylvester, and invested it in what is known as the William Mallonee farm, in Taylor county, near Meadland, containing about 339 acres, for which he paid $16,900.00, in cash, of which $7,000.00 belonged to Sylvester, and took a deed in his

own name, bearing date March 15, 1865.   Soon afterward, both Jacob and Sylvester, unmarried, took possession of the newly purchased farm and continued to reside there, or in the neighborhood thereof, until both died.   Part of the time they occupied the mansion house on the farm, and part of the time one of them resided elsewhere, but both enjoyed the rents, issues and profits until the death of Sylvester, which occurred about March 29, 1886.   Jacob married Mary Jane Robinson, by whom there was born to him an imbecile son, Bruce, and he (Jacob) died about September 13, 1888, leaving both wife and son surviving him, and the son died about July 17, 1896.   Sylvester married Eliza J. Snyder about January, 1876, and there were born to them five children, Clifton, Ernest, James, Viola and Thomas, of whom Thomas and Viola, plaintiffs in the bill, are still living.   Clifton was born November 1, 1874, and died August 17, 1892.   Ernest was born February 28, 1876, and died April 13, 1901. James was born October 2, 1877, and died November 18, 1896.   Viola was born September 15, 1880, and Thomas November 24, 1883.   Eliza J. Patrick, mother of all these children and widow of Sylvester, married Bryson Stuart, who has since died.   Mary Jane, widow of Jacob Patrick, married Larkin J. Stark, one of the defendants, and died in the year 1897, leaving a will, by which she devised to said Stark all of her property except certain sums of money which she gave as specific legacies to sundry persons, amounting, in the aggregate, to about $800.00.   Under this will Stark took the legal title to the land, since Bruce inherited it from his father, Jacob, and, dying without issue, left it to his mother. Under the will Stark claims, and is in possession of, the entire farm which now consists of about 260 acres, a portion thereof having been sold in April 1890, to Charles W. Reynolds, to satisfy the debts of Jacob Patrick, in a suit in equity brought by Allen Nuzum, his administrator.   After the death of Mary Jane, Stark married Louie Rogers, the other defendant.   On the 18th day of March, 1902, Larkin J. Stark and wife conveyed 28 8-10 acres of the land to Jeriah Stark, who, with his wife, re-conveyed it to the defendants by deed dated April 7, 1905,

Tacitly the bill says the plaintiffs have not received any rents or other profits of the land since the death of Sylves-

ter Patrick, March 29, 1886, for it fails to allege the fact
and charges that "Mary Jane Patrick inherited the interest
of her said son in said farm, and that the said Bruce Pat-
rick and the said Mary Jane, his mother, held the said
'William Mallonee Farm,' from the date of the death of
the said Jacob Patrick down to the date of the death of the
said Mary Jane in the year 1897, as hereinafter alleged,
subject to the equitable estate of the heirs of the said Syl-
vester Patrick;" and further that Jacob and Sylvester oper-
ated said farm jointly and together enjoyed the rents, issues
and profits thereof from the time of the purchase thereof
until they died.

As the bill sets up a cause of action cognizable only in
equity, an equitable title to real estate withheld by the
defendants, the statute of limitations cannot apply, either
directly or by analogy, no matter what the form or nature
of the trust may be, whether the statute will be applied in
equity, depends upon the nature of the demand asserted in
that court. If it be a purely legal demand, or, if it be one
of concurrent jurisdiction, equity will apply the statute by
analogy. *Newberger* v. *Wells*, 51 W. Va. 624, 632, *et seq.;*
*Thompson* v. *Whitaker Iron Co.*, 41 W. Va. 574; *Bland* v.
*Stewart*, 35 W. Va. 518; *Woods* v. *Stevenson*, 43 W. Va.
149; *Trader* v. *Jarvis*, 23 W. Va. 101; *Pusey* v. *Gardner*,
21 W. Va. 470. The bill sets up what is known in equity
as a resultant trust and no matter whether it be an express
trust or not, it can be enforced in an equitable forum
and not elsewhere. The character of the bill is de-
termined partly by the nature of the transaction to which
it relates and partly by its form and the relief it seeks.
If Jacob Patrick, having in his hands $7,000.00 of his
brother's money, without any authority, invested it in
land and took the deed in his own name, the brother had
an option to waive the wrong and ratify the act and claim
title to a share of the land, proportionate to the amount of
his money, or, to proceed as for a wrong, treating the
other party as a trustee *ex malificio*, and follow up the
fund, charge it upon the land and exact it therefrom. In
the former case, he would set up a resultant trust, an equita-
ble title in the land, which a court of equity would sus-
tain, on the presumption that it was the intention of the par-

ties, to make the one holding the legal title a trustee for the other. In the latter case, the bill would allege what is known in equity as a constructive trust, resting upon a fraud which made the perpetrator thereof a trustee for the injured party. *Marshall* v. *Hall*, 42 W. Va. 641; *Crumrine* v. *Crumrine*, 5 W. Va. 226; *Webb* v. *Bailey*, 41 W. Va. 463. His bill would assert a right in respect to the land, but it would be only a lien for the security of the wrongfully diverted fund. The statute of limitations could not apply in either case, for both would be cognizable in equity only. That it does not apply to all constructive trusts was expressly decided in *Newman* v. *Newman*, 60 W. Va. 371. That it does apply to some, namely, when the demand arising out of it is cognizable either at law or in equity, as the *cestui que trust* may elect, has been decided in *Beecher* v. *Foster*, 51 W. Va. 605, and in *Thompson* v. *Whitaker Iron Co.*, 41 W. Va. 574. In *Beecher* v. *Foster*, the demand set up was not the assertion of a lien upon land, but the recovery, by a mere personal decree, of a sum of money which had been wrongfully diverted by a trustee. It was not a purely equitable demand.

Though the statute of limitations does not apply, the rule of *laches* is applicable to all constructive, resultant and other trusts for the establishment of which resort to parol evidence is necessary. *Troll* v. *Carter*, 15 W. Va. 567, held as follows: " Whenever the courts permit parol evidence to be received to establish a trust, they always require such evidence to be clear and unquestionable, to produce such result. And they will never enforce such a parol trust, where a great lapse of time has intervened since the absolute deed was executed, and where the grantee, during such time, has acted as the absolute owner of the property, unless the *laches* of those claiming to be *cestui que trust* is satisfactorily explained." That resultant trusts, though express, are subject to this rule has been judicially declared. *Woods* v. *Stevenson*, 43 W. Va. 149; *Heiskell* v. *Powell*, 23 W. Va. 717; *Miller* v. *Blose*, 30 Grat. 744. It is sometimes interposed in the case of an express trust, evidenced by a written instrument, after the trustee has repudiated the same and brought home to the *cestui que trust* knowledge of his repudiation thereof. *Bargamin* v. *Clarke*,

20 Grat, 544. "It is often suggested that the lapse of time constitutes no bar in cases of trust. But this proposition must be received with its appropriate qualifications. As long as the relation of trustee and *cestui que trust* is acknowledged to exist between the parties, and the trust is continued, lapse of time can constitute no bar to an account or other proper relief for the *cestui que trust*. But, when this relation is no longer admitted to exist, or time and long acquiescence have obscured the nature and character of the trust, or the acts of the parties, or other circumstances give rise to presumptions unfavorable to its continuance, in all such cases a court of equity will refuse relief, upon the ground of lapse of time, and its inability to do complete justice. This doctrine will apply even to cases of express trust, and, a *fortiori*, it will apply with increased strength to cases of implied or constructive trusts." 2 Story's Equity, section 1520*a*, quoted with approval in *Bargrmin* v. *Clarke*, cited.

Long lapse of time raises a presumption of abandonment, and puts upon the plaintiff the duty of excusing or explaining it in his bill. Without such excuse his bill is bad on demurrer; but if the explanation made lays hold upon the conscience of the chancellor and satifies it that the plaintiff has been free from inequitable conduct, and has had some good reason for not asserting his demand at an earlier date, which negatives the presumption of abandonment, the delay is overlooked and the bill held good. The excuse set up here is infancy on the part of two of the plaintiffs, and that is amply sufficient to free them from the charge of *laches* during the period of their infancy; for generally, *laches* is not imputable to any person who is laboring under disability such as infancy or coverture. *Waldron* v. *Hervey*, 54 W. Va. 608, 617; *Baker* v. *Morris*, 10 Leigh 284; *Knight* v. *Watts*, 26 W. Va. 175; *Robinett* v. *Robinett's Heirs*, 19 S. E. 845; Hogg's Eq. Pr. section 289, p. 418. This seems to be a general rule, subject to exceptions and not an invariable one. In *Knight* v. *Watts*, JUDGE GREEN, said: "An infant or lunatic ought not to be prejudiced because of the failure of a next friend to institute such a suit, if such suit is brought promptly after there is some one upon whom the law imposes the obligation to guard the interests of the

infant or lunatic." While it may be said to depend some-what upon the circumstances, if it appear that, at the time the cause of action accrued, the plaintiffs were infants of tender years, they are seldom, if ever, turned away as having come too late. *Lamar's Ex.* v. *Hale,* 79 Va. 147; *Wilson* v. *Branch,* 77 Va. 65. It may be that infancy would be no protection, if *laches* had begun to run against the ancestor, since the running of the statute of limitations does not cease, in favor of heirs, by reason of the death of the ancestor against whom it had already commenced to run, but this question need not be considered or disposed of here, for time had not commenced to run against the ancestor. The bill alleges that, up until the time of his death, Sylvester Patrick shared with his brother in the rents, issues and profits of the land; and, so long as the trust relation was thus acknowledged and not repudiated, forbearance to sue for the legal title did not constitute *laches.* *Bargamin* v. *Clarke,* 20 Grat. 544; *Reed* v. *Bachman,* 57 S. E. 769. As long as there is an assertion of an equitable right by the party claiming it, recognized, acknowledged and acceded to by the other party, *laches* does not run. In other words, the fact of such continuous demand, recognition and ac-cession excuses lapse of time. *Southern Ry. Co.* v. *Gregg,* 101 Va. 308; *Griffin* v. *McCauley,* 7 Grat. 476; *Beverly* v. *Rhodes,* 86 Va. 415; *Alexander* v. *Byrd,* 85 Va. 690.

This suit was instituted on the 23rd day of August, 1905, less than one year after Thomas Patrick attained his ma-jority and less than four years after Viola Crouse attained hers. In view of their disability until dates so near the in-stitution of the suit, the demurrer should have been over-ruled, and, for the error of the court below in failing to do so, the decree will be reversed; but we refrain, in the present state of the case, from indicating any opinion as to when the trust was disavowed, if at all, since, on the final hearing, the facts will be more fully developed, and the cir-cumstances to be disclosed may be such as to deny relief, on the ground of *laches,* notwithstanding the disability under which the plaintiffs have labored. As we are not here applying the statute of limitations by analogy, the excuse for delay need not be alleged with the certainty and particularity, required

by the rule declared in *Newberger* v. *Wells*, 51 W. Va. 624, in which it was necessary for the plaintiffs to bring their case within the exception to the statute, relieving from its operation, when prosecution of the action has been obstructed by the fraudulent conduct of the defendant. There the right to sue was absolutely barred, and, to relieve themselves, the plaintiffs were called upon to establish an affirmative act of obstruction on the part of the defendants. Here the plaintiffs are required to overcome a mere rebuttable presumption, arising from delay, wherefore the averment in the bill of matter of excuse for the delay need not develop the whole case nor all the facts, bearing on the inquiry as to *laches*, nor set forth the facts with that degree of certainty, required when the object is relief from the bar of the statute of limtations.

For the reasons stated, the decree will be reversed, the demurrer overruled and the cause remanded.

*Reversed. Remanded.*