TULA CHARTER, *et al.*

*v.*

J. F. MAXWELL, *et al.*

(No. 10084)

Submitted January 18, 1949. Decided

February 22, 1949.

*L. W. Chapman,* for appellants.

*S. A. Powell,* for appellees.

LOVINS, JUDGE:

Tula Charter, Florence Charter and J. G. Charter were granted an appeal from an adverse decree of the Circuit Court of Doddridge County entered in a suit wherein they were plaintiffs, and J. F. Maxwell, J. B. Maxwell, M. Marie Reed, M. Marie Reed, Administratrix of the estate of J. Leeman Reed, deceased, Charles Edward Reed, James Howard Reed, Clay D. Hammond, guardian *ad litem* of Charles Edward Reed and James Howard Reed, infants, Kerzy Doak, Norval D. Pratt, L. R. Charter, Jr., and the County Court of Doddridge County, West Virginia, were defendants.

On April 17, 1934, the Circuit Court of Doddridge County entered a judgment in the amount of $23,788.99 and $57.25 costs, bearing interest at the rate of three per cent per annum from date, in favor of the State of West Virginia for the use and benefit of the County Court of Doddridge County against The Doddridge County Bank, E. A. Rinehart, receiver of said bank, J. G. Charter, L. R. Charter, Jr., G. W. Farr, J. F. Maxwell, Eli Nutter, and W. D. Gribble, the last six of whom were sureties on a depository bond, the forfeiture of which was the subject matter of the action in debt in which the said judgment was rendered. The judgment of April 17, 1934, was affirmed by this Court in *County Court v. Bank*, 116 W. Va. 683, 182 S.E. 884.

On February 6, 1936, J. G. Charter, L. R. Charter, Jr., and G. W. Farr entered into an agreement with the County Court of Doddridge County, which agreement is evidenced by an order of said county court, whereby each of the three individuals agreed to pay one-fifth of the judgment with interest. Upon the payment of such one-fifth of said judgment by each of said individuals, the county court agreed to execute full individual releases. Under this agreement each of the three so paying the sums specified would "become subrogated to any rights which the Court may have against the said Doddridge

County Bank." The bills of complaint herein allege that a similar arrangement was made between the said county court and Eli Nutter and W. D. Gribble, but that J. F. Maxwell has paid no portion of said judgment dated April 17, 1934.

The pleadings herein disclose that by reason of a certain instrument dated April 8, 1924, the defendant, J. F. Maxwell, and another became the lessees of the oil and gas in a sixty-five-acre tract of land located in Doddridge County. Although the exact interest of J. F. Maxwell at that time does not appear, on November 26, 1934, by an instrument designated a "deed", J. F. Maxwell transferred "the undivided fifty-one hundred twenty-eighths (51/128) interest" in said oil and gas lease to J. Leeman Reed, for a recited consideration of one thousand dollars, to which instrument there is attached a one dollar internal revenue stamp. On November 30, 1934, J. Leeman Reed transferred the same 51/128 undivided interest in said oil and gas lease to the defendant, J. B. Maxwell, son of J. F. Maxwell, who at that time was fifteen years of age. The recited consideration for the last-mentioned transfer was one thousand dollars, although no internal revenue stamp is attached thereto. Three days later, on December 3, 1934, the "deed" from J. F. Maxwell to Reed was recorded, but the "deed" from Reed to J. B. Maxwell was not recorded until July 8, 1941.

It is averred that since 1934, J. F. Maxwell has acquired an additional 1/128 undivided interest in said lease from parties unknown, by an instrument which, at the time of the institution of this suit had not been recorded.

From some time in the years 1933 or 1934 until March 16, 1944, defendant, Kerzy Doak, was agent for the persons owning said oil and gas lease. It was the agent's duty to make sale of all oil produced from the single producing well located on the land and to distribute the

proportionate shares of the income therefrom to the various owners of the leasehold estate. On March 16, 1944, defendant Norval D. Pratt succeeded Kerzy Doak as such agent.

During the time Doak acted as agent, various checks were issued annually, some of which were made payable to J. F. Maxwell, some payable to J. Leeman Reed, some payable to J. B. Maxwell, and some payable to J. F. Maxwell and J. B. Maxwell. The exact date on which any of these payments was made is not clearly shown by the record.

From the time Pratt became agent, no checks have been issued for the 52/128 undivided interests, which allegedly are actually owned by J. F. Maxwell and are in dispute here, but as of September, 1947, he held a balance of $507.00, which was payable to the account of the lawful owner or owners of the 52/128 undivided interest.

Subsequent to the agreement in 1936 between the County Court of Doddridge County and the Charters and Farr, J. G. Charter and L. R. Charter, Jr., paid in full the sums as agreed, and thereafter the interest of J. G. Charter in the judgment of April 17, 1934, was assigned to Florence Charter and Tula Charter, and the interest of L. R. Charter, Jr., in said judgment, by mesne assignments, is now vested in Tula Charter. On information and belief the bills allege that G. W. Farr, Eli Nutter and W. D. Gribble each had paid to said County Court one-fifth of the amount of said judgment.

Taking the position that as assignees of L. R. Charter Jr., and J. G. Charter, they are entitled to be subrogated to the rights of the county court and to enforce contribution by J. F. Maxwell for his proportionate share of the judgment of April 17, 1934, which their assignors have paid in his behalf, Tula Charter and Florence Charter, who were joined as parties plaintiff by J. G. Charter,

initially instituted their suit against J. F. Maxwell, J. B. Maxwell, and Kerzy Doak on June 18, 1943. In the original bill of complaint plaintiffs allege that the "deed" from J. F. Maxwell to J. Leeman Reed and the "deed" from J. Leeman Reed to J. B. Maxwell, were made "with the sole purpose and intent of hindering, delaying and defrauding your complainant and the other creditors of the said J. Forest Maxwell." On this premise the original bill of complaint sought to set aside the said "deeds" of November 26, 1934, and November 30, 1934, and to have J. F. Maxwell's interest in said leasehold estate subjected to the payment of the debts due plaintiffs from J. F. Maxwell. On August 16, 1943, the proceedings were stayed as to J. B. Maxwell, the court having been advised that at that time the said J. B. Maxwell was in the military service of the United States of America.

Thereafter, in October, 1943, the first amended and supplemental bill of complaint was filed, the purpose of which was to make M. Marie Reed, widow and administratrix of the estate of J. Leeman Reed, deceased, and James Howard Reed and Charles Edward Reed, infant sons, heirs and distributees of J. Leeman Reed, parties defendant.

No further proceedings were had herein until April 2, 1946, at which time the order of August 16, 1943, was vacated, J. B. Maxwell having been discharged from military service. On August 26, 1946, the trial court sustained a demurrer to the original bill of complaint, theretofore interposed by J. F. Maxwell and J. B. Maxwell, and the cause was remanded to rules with leave to plaintiffs to amend.

On September 19, 1946, plaintiffs filed their second amended and supplemental bill of complaint, which set forth somewhat in detail the facts heretofore related, and alleged, in effect, that plaintiffs, Tula Charter and Florence Charter, have claims against J. F. Maxwell to the extent of the right of contribution that their assign-

ors acquired by paying, in part, J. F. Maxwell's proportionate share of the judgment dated April 17, 1934. The second amended and supplemental bill of complaint also alleges that the instrument from J. F. Maxwell to J. Leeman Reed and the instrument from J. Leeman Reed to J. B. Maxwell, transferring the 51/128 undivided interest in the oil and gas lease "were each without valuable consideration, and made for the sole purpose and intent of hindering, delaying and defrauding these complaintants and other creditors of said J. F. Maxwell * * *, which intent was known to and participated in by the said J. Leeman Reed * * *." Plaintiffs prayed for decretal judgments to the extent of their demands against J. F. Maxwell; that the transfers of November 26, 1934, and November 30, 1934, be set aside, annulled and vacated; and for other relief.

To the second amended and supplemental bill of complaint, defendants, J. F. Maxwell and J. B. Maxwell, filed two pleas. The first plea is designated a "Plea of Limitation", by which defendants contend that five-year statutes of limitation are applicable, and that "such cause of action or suit" accrued more than five years prior to the institution of this suit. The second plea is designated "Plea in Bar", which, by various allegations therein contained, in effect attempts to set up an estoppel against plaintiffs from assertion of their alleged demands. Plaintiffs interposed a demurrer to defendants' "Plea of Limitation", which was overruled December 9, 1946. Thereafter on January 7, 1947, a third amended and supplemental bill of complaint was filed, the general purpose of which was to answer the matters pleaded in the "Plea in Bar", and further to allege that the failure to record the deed from J. Leeman Reed to J. B. Maxwell amounted to concealment of the fraud alleged to have been committed in the second amended and supplemental bill of complaint, thus tolling statutes of limitations.

Defendants' demurrer to the third amended and supplemental bill of complaint was overruled on April 18,

1947, and, pursuant to Code, 56-4-56, defendants were granted leave to file their answer within thirty days from that date. Defendants J. F. Maxwell and J. B. Maxwell, tendered an answer, which was lodged with the Clerk of the Circuit Court of Doddridge County on May 17, 1947. On June 5, 1947, plaintiffs moved the court for submission of the cause upon the record made up to that date "insisting that the answer filed as aforesaid comes too late * * *." On June 5, 1947, the answer of defendants theretofore lodged in the clerk's office was ordered filed.

Although the question is not raised in this Court, it is well to note that the failure to comply with the provisions of Code, 56-4-56, respecting the time for filing an answer after a demurrer has been overruled, confers on plaintiffs an absolute right to a default decree. *Strachan v. Insurance Co.*, 130 W.Va. 692, 44 S.E. 2d 845, 847. If the Circuit Court of Doddridge County was "in session" on May 17, 1947, Code, 56-4-56, is mandatory in requiring that the answer be filed "in court." If, however, the circuit court was "not in session", said answer was properly filed in the office of the clerk of said circuit court. There being no showing in this record to the contrary, we presume that the trial court acted correctly in ordering the answer filed, and that on May 17, 1947, the Circuit Court of Doddridge County was "not in session."

After various exhibits had been filed and the depositions of various witnesses had been taken, all of which tend, in a measure, to substantiate the allegations of the bills of complaint, the court on May 18, 1948, entered a final decree finding for the defendants and dismissing the plaintiffs' bill of complaint. On June 7, 1948, another decree of the trial court was entered, wherein it was stated "that by its said decree of the 18th day of May, 1948, the Court decided only the issue presented by the Plea of Limitation: that on said plea the Court was, and yet is, of the opinion from the record that plaintiffs'

claims and demands accrued more than five years prior to the institution of this their suit; that the five-year statutory limitation applied thereto; that the said statute was not tolled; and that the Court did not by its decree, nor does it now, decide any of the other issues presented by the record."

From those decrees plaintiffs prosecute their appeal. The issues before this Court, other than those involving jurisdiction are, of course, limited to the two issues determined by the trial court: (1) Were plaintiffs' rights subject to a five-year statute of limitation, and (2) if so, was the statute tolled?

We do not pass on any nonjurisdictional question other than those noted above. *Cook v. Collins,* 131 W.Va. 475, 48 S.E. 2d 161; *Highland v. Davis,* 119 W.Va. 501, 516, 195 S.E. 604; *Nuzum v. Nuzum,* 77 W.Va. 202, 206, 87 S.E. 463.

Regarding the first of these issues, it must be pointed out that the bills of complaint herein seek, first, to establish an enforceable claim or demand against the defendant J. F. Maxwell; and, second, to make available for the satisfaction of such claim or demand the 52/128 undivided interest in the oil and gas leasehold. Thus the plea of limitation and the decree of the trial court raise two controlling questions with respect thereto: (1) Are the claims of Tula Charter and Florence Charter barred by the statute of limitation; and (2) assuming plaintiffs have an enforceable claim or demand against J. F. Maxwell, are they required to institute their suit to set aside the transfers of November 26, 1934, and November 30, 1934, within five years from the dates of such transfers?

A creditor suing to set aside a conveyance or transfer as fraudulent or voluntary must have an enforceable debt or demand against the person who executed the allegedly fraudulent or voluntary instrument. *Henking v. Anderson,* 34 W.Va. 709, 12 S.E. 869. In this suit two

of the plaintiffs are the assignees of two of the co-sureties on the depository bond, against whom judgment was obtained. If the two co-sureties paid more than their proportionate share of said judgment, they are entitled to receive the amount of such overpayment from the co-surety who paid nothing. *Smith v. Davis,* 71 W.Va. 316, 76 S.E. 670; *Gooch v. Gooch,* 70 W.Va. 38, 73 S.E. 56. The rights of co-sureties are assignable and enforceable by an assignee. *Weimer v. Talbot,* 56 W.Va. 257, 49 S.E. 372. See 6 Pomeroy's Equity Jurisprudence (2 Pomeroy's Equitable Remedies) 3rd ed., Section 918. A demand based upon the doctrine of subrogation to the extent of the rights of contribution between co-sureties of an insolvent judgment debtor is sufficient as a basis for a suit to set aside a fraudulent conveyance. *Hawker v. Moore,* 40 W.Va. 49, 20 S.E. 848. Therefore, we conclude that Tula Charter and Florence Charter are entitled to all of the rights of the judgment creditor, which rights are enforceable if their demand is not barred by the statute of limitations.

In *Gooch v. Gooch, supra,* Judge Brannon, in discussing a question similar to the first question above, said: "* * * When payment is made, or release is made, the debt is dead in a court of law; but equity keeps it alive for the benefit of the surety or co-surety. A judgment paid is ended at law, but equity keeps it alive for the benefit of the surety. * * * But it is said that though there was once a right to subrogation it is lost by the statute of limitation of five years, the period applicable to the case of a surety demanding payment or contribution of his principal or co-surety. True, action at law would be barred; but this case is governed by the principle of subrogation. * * * The surety takes the creditor's shoes and can avail himself of the creditor's rights. So can the co-debtor. The statute of five years does not apply. * * *" Cf.*Camden v. Coal & Coke Co.,* 106 W.Va. 312, 145 S.E. 575.

To state differently the doctrine so discussed in *Gooch v. Gooch, supra,* and applying that doctrine to the facts of this case, had plaintiffs sought to enforce in law their demands for contribution against J. F. Maxwell, their action would have been based upon an implied contract to share equally the liability created by the judgment of April 17, 1934. Such a demand is subject to the five-year statute of limitation. Code, 55-2-6. But a suit in equity, although for the same general purposes, is based upon the separate and distinct equitable doctrine of subrogation and does not arise from an implied contract. In equity the claimant to the rights of subrogation "takes the creditor's shoes and can avail himself of the creditor's rights."

The limitations to which the creditor was subject are equally applied to the creditor's subrogee for the reason that where a court of equity has concurrent jurisdiction with a court of law, the same statutes of limitation are applicable. *Patrick v. Stark,* 62 W.Va. 602, 605, 59 S.E. 606. However, because the court of equity assumes jurisdiction by reason of the doctrine of subrogation, only the limitations which were applicable to the judgment creditor will be applied against such creditor's subrogee. *Smith v. Davis, supra.*

In this case enforcement of the judgment creditor's demand was subject to the ten-year statute of limitation. Code, 38-3-18. See *Werdenbaugh, Adm'r. et al. v. Reid, et al.,* 20 W.Va. 588. There being a ten-year statutory limitation placed upon enforcement of plaintiff's demands, Code, 55-2-12, is not applicable. Accordingly, we hold that the trial court erred in applying the five-year statute of limitation to the demands which plaintiffs, Tula Charter and Florence Charter, seek to enforce against the defendant J. F. Maxwell.

We have found no statute of limitation barring plaintiff's suit to have the transfers of November 26, 1934, and November 30, 1934, avoided as fraudulent. On the

contrary, this Court has held: "Statutes of limitation are never applicable to causes of action falling within the exclusive jurisdiction of courts of equity." *Patrick v. Stark, supra; Camden v. Coal & Coke Co., supra; Lewis v. Milam,* 113 W.Va. 549, 169 S.E. 70. It is too well settled to require citation of authority for support of the proposition that the avoidance of fraudulent instruments is within the exclusive jurisdiction of courts of equity.

Code, 40-1-4, provides that a suit to set aside a "transfer or charge" on the ground that it was without "consideration deemed valuable in law" must be brought within five years after such transfer or charge is made, except in the case of an infant or insane person. This suit was brought, however, under the provisions of Code, 40-1-1, and the limitations provided by Code, 40-1-4, do not apply. *Solins v. White,* 128 W.Va. 189, 36 S.E. 2d 135.

Although a suit to set aside a fraudulent transfer, of itself, is not subject to any statute of limitation, a prerequisite of such a suit is that plaintiff must have an enforceable debt or demand against defendant, as hereinabove stated. It follows that such suit must be instituted within the period during which plaintiffs' debt or demands are enforceable against defendant, which, in this suit, is ten years from April 17, 1934. Accordingly, we hold that the trial court erred in holding that plaintiffs' suit to avoid the transfers of November 26, 1934, and November 30, 1934, was barred.

Since this suit was instituted within ten years of the date of the judgment, consideration and discussion of the tolling of statutes of limitation are unnecessary.

As we have shown hereinabove, the foregoing discussion disposes of all the questions presented on this appeal. We do not pass upon the questions argued herein as to whether plaintiffs' demands constitute liens upon the

undivided interest in the leasehold estate allegedly owned by J. F. Maxwell. On this appeal we are concerned only with the existence of enforceable demands, not with claimed priorities as to such demands. However, since there may be further proceedings in this suit, we now point out that it has been held that leases, similar to the one granting the leasehold estate under consideration, create for the lessees a chattel real, which is personal property. *Coal & Coke Co. v. Tax Commissioner,* 59 W.Va. 605, 53 S.E. 928; *Lamp v. Jones,* 94 W.Va. 586, 119 S.E. 676. See *Fruth v. Board of Affairs,* 75 W.Va. 456, 84 S.E. 105. Being personal property, the judgment of April 17, 1934, would not create a lien upon the undivided interest in the leasehold estate. Nor would the alleged execution issued on the judgment on June 18, 1943, either constitute a lien upon the leasehold or extend the time in which the judgment may be enforced, it being reasonably inferred from the bills of complaint herein that at the time of issuance the County Court of Doddridge County had been paid the full amount of the judgment. If the judgment, in fact, was paid, it is, in law, of no force and effect, and an execution issued after such payment is void. *Greenbrier Bank v. Holt,* 114 W.Va. 363, 171 S.E. 906. A paper, filed as part of plaintiff's brief, purporting to be a certified copy of an execution aparently issued on the judgment on December 18, 1935, is not made a part of the record in this suit and is not considered.

In accordance with the foregoing, the decrees of the Circuit Court of Doddridge County are reversed and this cause is remanded to that court for further proceedings.

*Reversed and remanded.*